(October 3, 1913.)

UNION TRUST & SAVINGS BANK, Respondent and Plaintiff, v. IDAHO SMELTING & REFINING CO. et al., Defendants and Respondents, and TITLE GUARANTY & SURETY CO., Intervenor and Appellant.

[135 Pac. 822.]

JUDGMENT ON PLEADINGS—CORPORATE BONDS AND MORTGAGE—CONSTITUTIONAL LAW—SOLVENCY OF CORPORATION—INTERVENTION—RIGHT OF AMENDMENT.

1. As to whether a corporation may, under the provisions of sec. 9, art. 11, of the state constitution, issue its bonds secured by mortgage for the payment of pre-existing indebtedness or for a pledge as collateral for pre-existing indebtedness, mooted but not decided.

2. Where a third party seeks to intervene in a foreclosure suit and to have the mortgage or trust deed which is sought to be foreclosed set aside and canceled on the ground that it was issued by a corporation in violation of sec. 9 of art. 11 of the state constitution, and the intervenor alleges that it has a valid claim against the corporation which executed such mortgage which the corporation should pay, but fails to allege the insolvency of the corporation, or to show that intervenor has prosecuted its claim to judgment, or has made any attempt or effort to collect the same from the corporation, or that an attempt to do so would have been useless or futile, and has failed to allege that the corporation was unable to meet the obligation or that the same could not be collected from the corporation, *held,* that the complaint in intervention does not state facts sufficient to entitle intervenor to any relief in the foreclosure suit.

3. The assumption by the purchaser of real property of a pre-existing mortgage indebtedness as a part of the purchase price of such property constitutes a valuable consideration for the sale and transfer of the property.

4. The fact that a corporation has failed to pay interest on its bonds as the same fell due would constitute a circumstance as a part of the proof showing that such corporation was insolvent; but, standing alone as an isolated fact set up in the pleading, it is not sufficient from which a court may draw the conclusion or find that the corporation so failing to pay interest was insolvent.

5. The fact that one cannot or does not meet his obligations as they fall due does not of itself establish the fact that he is insolvent.

6. In order to render the provisions of sec. 15, art. 11, of the state constitution applicable to the sale or transfer of the property of a corporation, it must appear that the debt which it is sought to recover was "contracted or incurred in the operation, use or enjoyment" of the franchise or privileges accorded to such corporation under the constitution or statutes of the state.

7. Under the provisions of sec. 4111 of the Rev. Codes, any party may intervene in an action who has "an interest in the matter in litigation, in the success of either of the parties or an interest against both."

8. Where a motion is made by the plaintiff for a judgment on the pleadings, and an intervenor who has filed his complaint in intervention stands upon his complaint and argues the same and submits the matter to the judgment of the court, and it does not appear that he was taken by surprise, or in any way taken unawares, after the motion was granted and judgment was entered in favor of the plaintiff as prayed for by the complaint, it was too late for the inter-

venor to move to vacate and set aside the judgment and for leave to file an amended complaint in intervention, and the trial court properly denied such a motion.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. John M. Flynn, Judge.

Suit for foreclosure of a mortgage. Complaint in intervention by Title Guaranty & Surety Co. Judgment for the plaintiff. Intervenor appealed. *Affirmed.*

Charles L. Heitman, for Appellant.

It is contended by plaintiff's counsel that there is nothing in the record to show that the defendant mortgagor is now, or was, insolvent at the time of the execution of the mortgage. There is no direct allegation in the complaint in intervention to that effect, but it is submitted that plaintiff's complaint itself shows such a state of facts, from which the mortgagor's insolvency must be conclusively presumed. (*French v. Andrews,* 81 Hun, 272, 30 N. Y. Supp. 796; *In re Black,* 3 Fed. Cas. 495, Fed. Cas. No. 1457, 2 Ben. 196; *Phipps v. Harding,* 70 Fed. 468, 17 C. C. A. 203, 30 L. R. A. 513.)

Nearly five years have elapsed since the first instalment of interest was due on these mortgage bonds, and not a dollar has been paid. Such a condition of affairs conclusively establishes insolvency. One corporation cannot transfer its assets and business to another corporation, itself ceasing to do business, and no provision being made for the payment of the debts of the selling corporation. (*Tacoma Ledger Co. v. Western Home Assn.,* 37 Wash. 467, 79 Pac. 992.)

Our constitution, art. 2, sec. 15, prohibits a corporation from alienating its property "so as to release or relieve the franchise or property held thereunder from any of the liabilities of the lessor or grantor, or lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise or any of its privileges." (*Seymour v. Boise R. R. Co., ante,* p. 7, 132 Pac. 427.)

Intervenor's right to intervene is governed by sec. 4111, Rev. Codes. (*Pence v. Sweeney,* 3 Ida. 181, 28 Pac. 413; *Gold-*

*Hunter Min. Co. v. Holleman,* 3 Ida. 99, 27 Pac. 413; *Lacroix v. Menard,* 3 Mart. (La.), N. S., 339, 15 Am. Dec. 161; *Potlatch Lumber Co. v. Runkel, Intervenor,* 16 Ida. 192, 101 Pac. 396, 18 Ann. Cas. 591; *Coffey v. Greenfield,* 55 Cal. 382.)

It is contended that intervenor must secure a judgment and exhaust its remedy by execution. Such is not the law. An illegal corporate mortgage may be attacked by a general creditor where the corporation is insolvent. (3 Cook on Corporations, sec. 788; *Mellen v. Moline Iron Works,* 131 U. S. 352, 9 Sup. Ct. 781, 33 L. ed. 178; *Case v. Beauregard,* 101 U. S. 690, 25 L. ed. 1004.)

Where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference. (*Turner v. Adams,* 46 Mo. 95; *Postlewait v. Howes,* 3 Iowa, 365; *Ticonie Bank v. Harvey,* 16 Iowa, 141; *Botsford v. Beers,* 11 Conn. 369; *Payne v. Sheldon,* 63 Barb. (N. Y.) 169.)

Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. (*Tappan v. Evans,* 11 N. H. 311; *Holt v. Bancroft,* 30 Ala. 193.)

Plaintiff should have objected to the complaint in intervention at the time it was filed by motion to strike. By answering the complaint in intervention plaintiff waived its right to question intervenor's right to participate in the action and to obtain the relief to which the proofs and admissions show it entitled. (*Smith v. Penny,* 44 Cal. 161; *Donner v. Palmer,* 51 Cal. 629; *Lacroix v. Menard,* 3 Mart. (La.), N. S., 339, 15 Am. Dec. 161.)

Right cannot be affected by the granting of a nonsuit against the plaintiff, nor by the plaintiff's dismissal of the action. (*Elliott v. Ivers,* 6 Nev. 287; *Poehlmann v. Kennedy,* 48 Cal. 201.)

Objection to intervention because of insufficiency of complaint or want of right must be made at the time, or the right to object will be considered waived. (*Bangs v. Dunn,* 66 Cal. 72, 4 Pac. 963; *People v. Reis,* 76 Cal. 269, 18 Pac. 309.)

A judgment on the pleadings is not proper when there is an issue joined upon any single material proposition. (*Norris v. Lilly,* 147 Cal. 754, 109 Am. St. 188, 82 Pac. 425; 25 Cyc. 769.)

The application to vacate the judgment should have been resolved in favor of the intervenor. (*Humphreys v. Mining Co.,* 21 Ida. 127, Ann. Cas. 1913D, 433, 120 Pac. 823.)

A motion to amend the complaint after a nonsuit has been directed is not too late. (*Medbury v. Wattson,* 6 Met. (Mass.) 246, 39 Am. Dec. 726; 1 Ency. Pl. & Pr. 605.)

In the case at bar the amended complaint in intervention sets up additional defenses. (*State v. Coleman,* 71 Wash. 15, 127 Pac. 570.)

G. H. Martin and W. E. Cullen, for Respondent.

Insolvency of the Idaho Smelting & Refining Co. must be shown affirmatively by the intervenor, as of the date of the execution of the trust deed, to entitle it to the relief prayed for in this action. (Thomp. on Corp., sec. 6128; *Metcalf v. Munson,* 10 Allen (Mass.), 491; *Vennard v. McConnell,* 11 Allen (Mass.), 555; *Hollins v. Brierfield Coal & Iron Co.,* 150 U. S. 371, 14 Sup. Ct. 127, 37 L. ed. 1113; *Bank v. Dovetail Co.,* 143 Ind. 550, 52 Am. St. 435, 40 N. E. 810; *Louisville Banking Co. v. Etheridge,* 19 Ky. Law Rep. 908, 43 S. W. 170; *Alberger v. Bank,* 123 Mo. 313, 27 S. W. 657; *Waggoner etc. Co. v. Ziegler,* 128 Mo. 473, 31 S. W. 28; *Shaw v. Robinson,* 50 Neb. 403, 69 N. W. 947; *Bank v. Newton Cotton Mills,* 115 N. C. 507, 20 S. E. 767; *Weyeth Hdw. Co. v. James,* 15 Utah, 110, 47 Pac. 604; *O'Bear Jewelry Co. v. Volfer,* 106 Ala. 205, 54 Am. St. 31, 17 So. 525, 28 L. R. A. 707; 3 Clark & Marshall on Corp., p. 2331; and note to *Conover v. Hull,* 10 Wash. 673, 45 Am. St. 810, 39 Pac. 166.)

A corporation is not insolvent, necessarily, because it is embarrassed and unable to pay its debts, as they become due, or even because all of its assets, if sold, would not bring enough to pay all of its liabilities, if it is still in good faith engaged in the business for which it is created, with the prospect and expectation of continuing. (3 Clark & Marshall on Corp., p. 2370.)

It does not appear in this case that either the Fasset or the Traders' State Bank debt was contracted or incurred in the operation, use or enjoyment of the franchise of the Panhandle Company, or any of its privileges, and in the absence of such an allegation, and proof thereof, the intervenor would not be entitled to recover. (*Cooper v. Utah Light & R. Co.*, 35 Utah, 570, 136 Am. St. 1075, 102 Pac. 202; *Klosterman v. Mason*, 8 Wash. 281, 36 Pac. 136.)

A creditor whose claim has not been liquidated by a judgment has no right to intervene in an action between his debtor and a third person. (*Brown v. Saul*, 4 Mart. (La.), N. S., 434, 16 Am. Dec. 175.)

The application to intervene must be treated as a complaint, and must therefore show affirmatively such facts as are requisite to entitle the applicant to intervene in the action. (*People v. Talmage*, 6 Cal. 256; *Clapp v. Phelps*, 19 La. Ann. 461, 92 Am. Dec. 545.)

Before a creditor, seeking to subject his debtor's property to the payment of his debt, will be assisted in equity, he must have exhausted the remedies afforded him by courts of law. (12 Cyc. 6.)

The creditor must have a judgment and he must issue execution thereon and undertake to enforce the same, or allege that the issuance and levy of an execution would be fruitless. (12 Cyc. 12; 3 Cook on Corp., 6th ed., secs. 766A–767.)

If the party whose pleading is assailed fails to make the application for leave to amend before the court acts upon the motion and renders judgment, such party is not entitled thereafter to amend. (11 Ency. Pl. & Pr. 1047; *Kelly v. Kriess*, 67 Cal. 210, 9 Pac. 129.)

The presumption is in favor of the action of the trial court denying the right to amend. (1 Ency. Pl. & Pr. 532.)

AILSHIE, C. J.—This is an appeal from a judgment entered on the pleadings and an order denying intervenor's motion to vacate and set aside the judgment and permit the intervenor to file an amended complaint in intervention.

The essential facts are substantially as follows: The Union Trust & Savings Bank of Spokane commenced an action against the Idaho Smelting & Refining Co. to foreclose a trust deed executed by the Idaho Smelting & Refining Co. on January 25, 1908, for the security of a bond issue of $500,000. The defendant defaulted, and its default was entered on November 14, 1912. After the entry of default, the intervenor herein, Title Guaranty & Surety Co., obtained an order permitting it to intervene in the action, and on the same day, November 18, 1912, filed its complaint in intervention. The intervenor alleged its existence as a corporation under the laws of the state of Pennsylvania and its compliance with the foreign corporation laws of the state of Idaho and its right to do business within the state. It denies certain allegations of the complaint, and then alleges that on the first day of January, 1908, the Panhandle Smelting Co., a corporation doing business in the state of Idaho, was indebted to C. M. Fasset Co., Inc., and that it was also at the same time indebted to the Traders' State Bank, and that at the same time the Panhandle Smelting Co. was insolvent; "that on or about the first day of February, 1908, the Panhandle Smelting Co., Ltd., a corporation aforesaid, sold, transferred and conveyed all of its assets to the Idaho Smelting & Refining Co., a corporation, which assumed and agreed to pay all the debts of the Panhandle Smelting Co., Ltd., and assume all its liabilities." The foregoing allegation is followed by an allegation that on May 20, 1908, and for several months prior thereto, there was an action pending in the district court in and for Bonner county in which C. M. Fasset Co., Inc., was plaintiff and the Panhandle Smelting Co., a corporation, was defendant, and that the plaintiff in that action sued out a writ of attachment against the defendant therein and that the defendant, the Panhandle Smelting Co., in order to obtain a release and discharge of the attachment secured this intervenor to give a bond for the release of attachment, and that thereafter C. M. Fasset Co. procured a judgment against the Panhandle Smelting Co. for the sum of $347.55, which judgments and interest and penalties intervenor was thereafter obliged to pay, and did pay, and took

from the C. M. Fasset Co. an assignment of its judgment. It is also alleged that upon July 24, 1908, there was pending in the district court in and for Bonner county, an action wherein the Traders' State Bank, a corporation, was plaintiff and Panhandle Smelting Co., Ltd., and Idaho Smelting & Refining Co. and J. Herbert Anderson were defendants, and that an attachment was sued out in that action, and the defendants procured this intervenor to execute and deliver to the plaintiffs a bond for the release and discharge of such attachment, and that such bond was accordingly given, and the property attached was released and discharged, and that thereafter a judgment was recovered in favor of the plaintiff, the Traders' State Bank, for the sum of $4,109.88, and that thereafter the Traders' State Bank brought an action against the intervenor on the bond which it had executed for the release of the attachment and secured a judgment against the intervenor for $3,950.70, which judgment intervenor thereafter paid, together with interests and costs. Intervenor thereupon alleges that it is entitled to be substituted and subrogated to all the rights of the Traders' State Bank and C. M. Fasset Co. under these several judgments, and to have its claim and remedy under such judgment against the Idaho Smelting & Refining Co., and to have such judgments paid out of the property which was transferred by the Panhandle Smelting Co. to the Idaho Smelting & Refining Co., which property was subsequently mortgaged to the plaintiff in this action. By paragraph 12 of the complaint in intervention it is alleged that the "Idaho Smelting & Refining Co., on or about the 22d day of January, 1908, executed and delivered to Union Trust Co. of Spokane, as trustee, a trust deed, or mortgage, upon all its property, real and personal, to secure the payment of bonds to be issued by it in a sum aggregating five hundred thousand dollars, which bonds this intervenor is informed and believes and therefore alleges, were to be sold, and the proceeds applied to the payment of all indebtedness, and balance used in the company business, but instead of selling said bonds, a large amount thereof unknown to this intervenor were issued to and kept by J. Herbert Anderson, George S. Brook, E.

Nicholson, H. Wallenberger, John Mocine, S. W. Geobo, C. L. Greenough, and W. D. Greenough, and Fidelity Natl. Bank of Spokane, Wash., a corporation, without any present consideration other than antecedent indebtedness, and thereby intending to secure to themselves a preference over other creditors of the insolvent corporation, Panhandle Smelting Co., and to exclude from participation all other creditors, including C. M. Fasset Co., Inc., and Traders' State Bank, and this intervenor.'' Intervenor thereupon prays that the trust deed and bonds set up in plaintiff's complaint be set aside and held for naught as against the intervenor, and that an accounting be had of the assets and property of the said defendant, Idaho Smelting & Refining Co., and its indebtedness to all parties and for all purposes be determined and fixed; that this intervenor be substituted to all the rights of C. M. Fasset Co., Inc., a corporation, and Traders' State Bank under their respective judgments and under their attachments, and to all their rights, and that a sale of the properties and assets of the Idaho Smelting & Refining Co. be ordered, and that the order of preference, if any should be accorded among creditors, be determined, and that the proceeds from the sale be distributed in accordance with the right of preference.

The trial court held that this complaint in intervention was not sufficient to entitle intervenor to any relief whatever. The trial judge in his order sustaining a motion for judgment on the pleadings sets forth his reasons for sustaining the motion as follows:

''That said motion of the plaintiff be and the same is hereby sustained because the answer and complaint in intervention of the intervenor contains no allegations of insolvency of the Idaho Smelting & Refining Co., and because the same contains no allegation of fraud, actual or constructive, and because the same contains no allegations of effort on the part of the intervenor to exhaust its legal remedies or that such remedies would be fruitless, and because the same contains no allegations of intervenor's inability to collect its judgment by pursuing its legal remedies, and because the facts alleged in the said answer and complaint in intervention fail to show a right

on the part of intervenor to intervene, and such facts are not sufficient to constitute a defense to plaintiff's action or a right of action in behalf of intervenor.''

Counsel for appellant have not devoted much time to the discussion of the questions involved in the court's ruling which he sets forth as his reasons for sustaining the motion for judgment on the pleadings. The appellant, however, has placed its chief reliance upon the proposition that the bond issue in this case was in violation of sec. 9, art. 11 of the state constitution, which provides as follows:

''No corporation shall issue stocks or bonds, except for labor done, services performed, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding a majority of the stock, first obtained at a meeting, held after at least thirty days' notice given in pursuance of law.''

Counsel contend that under the foregoing provisions of the Idaho constitution and the like provisions of sec. 183, art. 12 of the constitution of the state of Washington, where the Idaho Smelting & Refining Co. was created and exists, ''the bond issue secured by said mortgage or trust deed is absolutely void.'' Counsel for appellant, in support of this contention, rely chiefly on the following authorities: *Farmers' Loan & Trust Co. v. San Diego Street Car Co.,* 45 Fed. 518; *Nichols v. Waukesha Canning Co.,* 195 Fed. 812; *National Foundry & Pipe Works v. Oconto Water Co.,* 52 Fed. 29. Respondent, on the other hand, takes issue with appellant on the construction which counsel seek to place on this provision of the constitution and calls our attention to a great many authorities, among which are, 3 Thompson on Corporations, sec. 2301; *Memphis etc. Co. v. Dow,* 120 U. S. 287, 7 Sup. Ct. 482, 30 L. ed. 595; *In re Goldville Mfg. Co.,* 118 Fed. 892; *Wm. Firth Co. v. Loan & Trust Co.,* 122 Fed. 569, 59 C. C. A. 73; *Atlantic Trust Co. v. Woodbridge Canal & Irr. Co.,* 79 Fed. 842.

It is apparent, however, as may be seen from the foregoing order of the district judge, that the trial court did not base

his decision on a construction of this constitutional provision. His order and judgment rest on the proposition that the intervenor has not pleaded facts which give it a standing in court or entitle it to any relief. If any one of the reasons given by the judge for sustaining the plaintiff's motion for judgment on the pleadings is sound, then the order must be upheld upon the ground that no issue was tendered sufficient to entitle the intervenor to any relief, irrespective of the power of the Smelting & Refining Co. to issue these bonds and execute the trust deed. Before the intervenor could show any right to relief, it would be first necessary for it to establish the fact that it had an existing claim against the Smelting & Refining Co. which the company was either legally or equitably bound to pay; and if the intervenor is seeking equitable relief, it must first show either that it had no legal remedy or if it did have a legal remedy that it had pursued such remedy and had been unable to collect the obligation, or, in lieu thereof, show that it would have been useless and fruitless to attempt to pursue any legal remedy. This, we think, is a well-established rule of law.

Again, it is alleged by the intervenor that when the Idaho Smelting & Refining Co. purchased this property from the Panhandle Co., "the Smelting & Refining Co. assumed and agreed to pay and discharge all of the debts of the Panhandle Smelting Co., Ltd., and assume all its liabilities." If that allegation be true, as we must assume it is for the purposes of this consideration, then it was the duty of the intervenor, if it had either a legal or equitable claim against the Panhandle Co., to take the necessary steps to collect the same from the Smelting & Refining Co. if it could not collect it from the Panhandle Co.

It also appears that at the time of the sale and transfer from the Panhandle Smelting Co. to the Idaho Smelting & Refining Co., that the property was mortgaged to the Fidelity National Bank, and that this mortgage was assumed by the Smelting and Refining Co. as a part of the purchase price, and that the bond issue, among other things, was used to pay off or secure this pre-existing loan. Now, we express no

opinion as to the power of the corporation under the constitution of this state to issue its bonds and pledge them as collateral security for a pre-existing indebtedness. This is one of. the questions that has been raised in the principal argument made in this case. The assumption, however, of this indebtedness by the Idaho Smelting & Refining Co. would constitute a valuable consideration for the sale and transfer.

It is alleged that the Panhandle Co. was insolvent at the time of the transfer. It is nowhere alleged, however, that the Idaho Smelting & Refining Co. was or has been at any time insolvent or unable to pay all its debts and obligations. It was necessary for intervenor to show this fact in order to maintain an action in intervention. (*Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. ed. 1113.) It is true that it appears from the pleadings herein that these bonds had been outstanding for several years and that no interest had been paid thereon. This, as a matter of proof, would be a circumstance tending to show insolvency, but such fact, standing alone, does not establish the insolvency of an individual or corporation which fails to pay interest on outstanding obligations, and for the purpose of considering and passing upon the pleadings a court would not be justified in seizing upon such a single isolated circumstance and drawing the legal conclusion therefrom that the corporation was insolvent. (*Phipps v. Harding,* 70 Fed. 468, 17 C. C. A. 203, 30 L. R. A. 513; 3 Clark & Marshall on Corporations, vol. 3, p. 2370.) It would be an unsafe and dangerous rule to announce that every person who does not meet his obligations as they fall due is insolvent. That kind of a doctrine would place a large number of perfectly solvent and responsible persons at the mercy of anyone who might want to ruin their business and credit by securing the appointment of a receiver to take charge of their business and property. Many men and corporations as well have plenty of property and assets to meet all obligations, and yet it is not in such condition that they can realize ready cash on it as their debts and obligations fall due.

It is nowhere alleged that the intervenor could not collect this claim by process of law from the Smelting & Refining Co.,—that it has made any attempt to collect from this corporation. It was necessary to allege these facts before intervenor would be in a position to contest the mortgage held by respondent against the Refining & Smelting Co. After the intervenor had first shown the existence of its claim and that it had exhausted all of its legal remedies, or that those remedies were useless and it would be vain to pursue them, and that the only way it could secure and collect its claim would be out of the property covered by this mortgage, then it would have been in a position to contest the validity of the mortgage and to raise the question as to whether or not these bonds had been issued and this mortgage had been executed in violation of the provisions of the constitution of this state (sec. 9, art. 11) or of the state of Washington, where this corporation was organized and exists.

The suggestion that the property covered by this trust deed is liable for the debt due intervenor under the provisions of sec. 15, art. 11, of the constitution, does not receive any support from the allegations of the complaint in intervention. There is no suggestion in the pleadings that the debt pleaded was "contracted or incurred in the operation, use or enjoyment" of any franchise or privilege accorded to the corporation under the constitution or statute of this state. The allegations do not bring the claim within the decision of this court in *Seymour v. Boise R. R. Co., ante,* p. 7, 132 Pac. 427. On the other hand, *Cooper v. Utah Light & Ry. Co.,* 35 Utah, 570, 136 Am. St. 1075, 102 Pac. 202, completely answers appellant's contention on this phase of the case.

The contention made that the intervenor had no right of intervention is not well taken. It so happens that it failed to state a cause of action or any ground entitling it to relief and for that reason had no standing in the case. If, however, the facts which it omitted to plead, as hereinbefore indicated, had existed and been set forth in its complaint, it would clearly have come within the provisions of the statute (sec. 4111) and have been entitled to intervene. Any third party

may intervene in an action in this state who has "an interest in the matter in litigation, in the success of either of the parties, or an interest against both." (*Potlatch Lumber Co. v. Runkel,* 16 Ida. 192, 101 Pac. 396, 18 Ann. Cas. 591.)

Finally, it is argued by counsel for appellant that the court erred in denying the motion of intervenor to vacate and set aside the judgment and allow it to file an amended complaint in intervention. The showing made in support of this motion afforded more reason for denying it than for granting it. It appears by affidavit of one of the attorneys "that it was his intention, in the event of the plaintiff's motion for judgment on the pleadings being granted, to immediately ask leave of the court to file an amended complaint in intervention to meet the grounds and objections upon which the court's decision granting said motion might be based; . . . . that he desired to have the opinion of the court upon the points raised before applying for leave to amend, and that, relying upon his belief that he would be given notice of the decision before further action was taken by the court, he did not give notice, in advance of the decision, of his intention to ask for leave to amend in the event of an adverse decision." We do not take it that counsel who made this showing intended to trifle with the court, but a moment's reflection would satisfy anyone that such a course of conduct would have the effect of merely presenting moot questions to a court and seeking to get the court's opinion of certain questions in advance of the trial of a case. Such a practice is unauthorized, and no attorney has a right to assume that a court, after passing upon a motion for judgment on the pleadings and granting the motion and the relief sought by the motion, is going to forthwith vacate and set aside such order and allow the parties to reform their pleadings and make up new issues in the case where no one is taken by surprise or unawares. If a litigant proposes to stand upon his pleading and argue a motion which goes to the very vitals of the issues, he must then abide the results. If he has amendments to propose, he ought to make them without taking the time of the court and his adversary in arguing sham pleadings or such pleadings as do not cover

all the facts he desires to put in issue or all the issues he desires to tender. A motion for judgment on the pleadings is granted because of a lack of issues or because no material issue has been joined.

The court did not err in denying the application to set aside the judgment and allow the intervenor to file an amended complaint.

The judgment should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan and Stewart, JJ., concur.