369 P.2d 45

**LA VOY SUPPLY COMPANY, a Corporation, Plaintiff-Respondent and Cross-Appellant,**

**Hubbard Lumber, Inc., Plaintiff in Intervention, Respondent and Cross-Appellant,**

**Fern Dille, Additional Plaintiff in Intervention, Respondent and Cross-Appellant,**

v.

**A. Stanley YOUNG, Defendant-Appellant and Cross-Respondent,**

and

**Dale G. Haile, Defendant.**

No. 8958.

Supreme Court of Idaho.

Feb. 19, 1962.

Rehearing Denied March 12, 1962.

Gigray & Boyd, Caldwell, for defendant-appellant and cross-respondent.

Dean E. Miller, Caldwell, for plaintiff-respondent and cross-appellant.

Smith & Miller, Laurence N. Smith,. Caldwell, for plaintiffs in intervention, respondents and cross-appellants.

of a corporation in relation to establishing a director as a secured creditor taking precedence over general creditors.

Defendant A. Stanley Young will be referred to herein as appellant, the defendant Dale G. Haile, sheriff of Canyon County, being a nominal party only.

Newell E. LaVoy in 1954 transferred personal property having an estimated value of $23,500 for stock in the newly-formed LaVoy Supply Company, a corporation. The incorporators were Newell E. LaVoy; his wife, Gwyneth B. LaVoy, and Lyle E. Sparber of Hubbard Lumber, Inc. Among other things, the corporation was formed to engage in the trucking and lumber business.

In July, 1955, appellant Stanley Young was employed as a truck dispatcher. During November, 1955, he was assigned the responsibility of maintaining the corporate books; prior to that time there had been little done by way of bookkeeping for the corporation.

On November 27, 1955, appellant made an unsecured loan of $15,000 to LaVoy Supply Company. He advanced another $5,000 in February, 1956. During March, 1956, in consideration of another $5,000 loan and an additional $20,000 in cash, appellant purchased $25,000 of the corporation's capital stock. Some additional stock was transferred to appellant, but it has no bearing on the issues of the case. Young

McQUADE, Justice.

The principal issue in this case is raised by a factual determination of the solvency

became a director and vice president of the corporation at the time he purchased the stock.

On the occasion of appellant's stock purchase he entered into an agreement with the corporation through its president, Newell E. LaVoy, granting to the corporation an option to repurchase the stock if it should be offered for sale.

During April of 1956, appellant became dissatisfied with the corporation's policy and management, and he advised LaVoy the stock was for sale. Newell E. LaVoy, as president of LaVoy Supply Company, exercised the option to purchase the stock in the sum of $25,000, and at that time the corporation borrowed an additional $8,000 from appellant. Balance due on the November, 1955, loan had been reduced by payments to the sum of $11,413.90.

On April 19, 1956, the sums of $25,000, $8,000, and $11,413.90 were consolidated into a note in the sum of $44,413.90. The note was secured by a chattel mortgage of the corporation's interest in four trucks, four trailers, and a lift truck. The chattel mortgage was recorded in the county recorder's office and with the Department of Law Enforcement of the State of Idaho. Immediately thereafter, Young apparently terminated all other relation with the corporation.

Payments were made on the note until June, 1957. About that time the plaintiff in intervention, Hubbard Lumber, Inc., leased the trucks of LaVoy Supply Company and took over its operation. From June to October in 1957, respondent LaVoy Supply Company failed to meet its obligation on appellant's note.

Appellant commenced foreclosure action of the chattel mortgage during the latter part of October, 1957.

On November 4, plaintiff LaVoy Supply Company brought this action to cancel the note and mortgage, for an accounting, to restrain the sheriff from proceeding with the foreclosure sale, and for damages. That plaintiff contends the foreclosure was in violation of an alleged agreement to extend the time of payment to November.

Plaintiffs in intervention, Hubbard Lumber, Inc., and Fern Dille, intervened as general creditors of LaVoy Supply Company, asking, inter alia, that appellant's mortgage be declared null and void. Intervenor Fern Dille asked also for appointment of a receiver for LaVoy Supply Company.

The trial court issued a temporary injunction restraining the sheriff's sale. Following a hearing, this order was set aside and the sale proceeded. Appellant purchased part of the mortgaged equipment at the foreclosure proceeding, and paid a $5,200 balance due LaVoy Supply Company's vendor.

LaVoy Supply Company forfeited its state charter December 2, 1957, for failure to file an annual statement and failure to pay its corporation license tax.

After a trial, the district court found the note and the mortgage were invalid to the extent that LaVoy Supply Company should have a judgment against appellant in the sum of $34,821.86. Judgment was also entered against LaVoy Supply Company and in favor of Hubbard Lumber, Inc., for money which the latter had loaned and was also due in the sum of $13,029.52. Judgment was entered for plaintiff in intervention Fern Dille against LaVoy Supply Company for insurance premiums past due in the sum of $5,985.86. The trial court determined a receiver should be appointed to take charge of the corporate assets and distribute these among the creditors.

Appellant appeals from this judgment, and the respondent cross-appeals for the reason it contends it was entitled to the full sum of the note and the mortgage executed in behalf of appellant.

On trial of the case, respondents sought to establish invalidity of the stock purchase agreement and the accompanying mortgage on the theory that a corporation and its officers are prohibited as a matter of law from entering into this type of agreement. Respondents urge that officers of a corporation are fiduciaries, in a trust capacity, of

assets for the benefit of creditors. Respondents also sought to prove such insolvency of the corporation as would render the repurchase of appellant's stock null and void.

Accountants for the parties prepared audits of the corporation's April 19, 1956, financial status, the condensed statements of which are as follows:

|  | Respondents' Audit | Appellant's Audit |
|---|---|---|
| ASSETS |  |  |
| Current | 51,149.30 | 62,348.89 |
| Property and Equipment | 108,768.77 | 108,574.26 |
| Other Assets | 7,714.25 |  |
| Total | 167,632.32 | 170,923.15 |
| LIABILITIES |  |  |
| Current | 123,618.05 | 111,128.99 |
| Long Term & Reserve | 20,230.39 | 26,112.19 |
| Capital (Including outstanding stock) | 23,783.88 | 33,681.97 |
| Total | 167,632.32 | 170,923.15 |

Based upon the audits, the trial court concluded that according to respondents' accountant the purchase of the stock for $25,000 created liabilities of $1,216.12 greater than the assets, whereas appellant's accountant demonstrated that such a repurchase would result in a net capital balance of $8,681.97.

Appellant assigns error to the findings of fact and conclusions of law.

The trial court found that the corporation was insolvent at the time the repurchase agreement was entered into.

■ The respondent corporation brought this action to set aside the agreement, partly upon the ground that it was insolvent at the

time the agreement was made. It was necessary for it and the intervenors to establish the insolvency. Union Trust etc. Bk. v. Idaho S. & R. Co., 24 Idaho 735, 135 P. 822; 19 C.J.S. Corporations § 1374, p. 1087. There is uncertainty apparent in the record as to the proof necessary to establish insolvency. Both parties have advanced proof as of April 19, 1956, the date of the agreement.

Respondents take the position that capital stock must be charged as a liability in computing liabilities of a corporation, whereas appellant, although computing stock as a liability, asserts that capital stock need not be so considered. Appellant goes further and has authorities to urge that a corporation is presumed solvent if it continues as a going concern.

This problem has not been presented in Idaho, but it has been said:

"* * * It would be an unsafe and dangerous rule to announce that every person who does not meet his obligations as they fall due is insolvent. That kind of a doctrine would place a large number of perfectly solvent and responsible persons at the mercy of anyone who might want to ruin their business and credit by securing the appointment of a receiver to take charge of their business and property. Many men and corporations as well have plenty of property and assets to meet all obligations, and yet it is not in such condition that they can realize ready cash on it as their debts and obligations fall due." Union Trust etc. Bk. v. Idaho S. & R. Co., 24 Idaho 735, 135 P. 822.

Testing ability of a corporation to meet its current obligations is discussed also in 13 Am.Jur., Corporations, sec. 1261, p. 1141:

"As in the case of individuals, the term 'insolvency' as applied to a corporation is not always used in the same sense. It may sometimes indicate an insufficiency of the entire property and assets to pay the debts, or, in a more restricted sense, it may denote an inability to pay debts as they become due in the ordinary course of business. Certainly a corporation is insolvent if, its assets being insufficient to pay its debts, it has ceased to do business, has taken or is about to take a step which will practically incapacitate it from conducting the corporate enterprise with reasonable prospect of success, or its financial embarrassment is such that early suspension and failure must ensue. The cases very generally agree that a corporation is not insolvent within the meaning of the rule which prevents a preference to directors merely because it cannot meet its obligations as they become due or because its assets are not equal to, or would not if sold pay all, its liabilities, where it is still a going concern—that is, continuing

its business with some expectation and a reasonable prospect of being able to continue the corporate enterprise."

■ Determination of a corporation's solvency is interestingly discussed in Hamilton v. Menominee Falls Quarry Co., 106 Wis. 352, 81 N.W. 876:

"* * * Insolvency, as the word is here used, does not mean an insufficiency of quick assets to pay all debts at once, nor the inability to meet commercial obligations as they fall due in the course of business, but it means that the property of the debtor, real and personal, estimated at a fair and reasonable valuation, is substantially less than his debts. * * *"

The Wisconsin court analyzed the relation of stock to corporate solvency, concluding that value of corporation stock could not be used in making this test. The reason being sound and the conclusion being just, this Court concludes that corporate stock is not to be reckoned as a liability in determining a corporation's solvency for our purposes herein. See also 19 C.J.S. Corporations § 1372(b), p. 1086.

■ Therefore, the proof failed to establish the corporation's insolvency, a burden which rested upon respondents.

Statutory provisions cited in the briefs, relating to general business corporations, to wit, I.C. secs. 30–130 and 30–149, are not applicable to the circumstances of this case, inasmuch as those statutes are designed for other specific purposes.

Although there appears to be no express statutory authority for repurchase of stock by a corporation in the State of Idaho, I.C. sec. 30–157(14) makes provision for stock which has been repurchased by a corporation.

■ Idaho follows the rule that an insolvent corporation may not repurchase its stock. White v. Lorimer's City Dye Works, 46 Idaho 490, 269 P. 90.

■ A corporation itself cannot have a stock repurchase declared illegal, nor can creditors who are not injured have a right to complain. 6A Fletcher, Cyclopedia Corporations (1950 revision), sec. 2861, pp. 413–415.

■■ This problem was also discussed in Hamilton v. Menominee Falls Quarry Co., supra:

"* * * It is * * * true that stockholders of a corporation may, by action, prevent the directors from wasting or squandering the capital or assets of the corporation * * *. No such question arises here, however, because the transfer here attacked was made with the consent and approval of every stockholder, and they could not be heard to complain thereof * * *."

Hubbard Lumber, Inc., had no right of intervention because there was no obligation due it from plaintiff LaVoy as of April, 1957. Intervenor Fern Dille had a continuing account with the corporation, making charges and receiving payments thereon between April, 1956, and October, 1957. Therefore, this creditor could not be classified as one who could object to the transaction between defendant Young and the corporation.

■ Respondent contends that the assets of a corporation are to be held in trust for creditors, a rule Idaho has followed:

"* * * The assets of the corporation constitute a trust fund for the payment of its debts, which cannot lawfully be divided up until after the creditors are paid. * * *" Weil v. Defenbach, 31 Idaho 258, 170 P. 103.

This rule, which was predicated upon a statute, was cited and followed in other Idaho cases. We no longer have the statute referred to in that case, and it further appears that such a rule is applicable to insolvent corporations. A correct statement of the applicability of the trust fund theory was set out in Hamilton v. Menominee Falls Quarry Co., 106 Wis. 352, 81 N.W. 876:

"* * * it is only when the corporation ceases to be a going concern, or the situation is such that its directors know, or ought to know, that suspension is impending, that its assets become a trust fund, so that directors may not prefer themselves over general creditors * * *."

See also Harle-Haas Drug Co. v. Rogers Drug Co., 19 Wyo. 35, 113 P. 791.

Respondent vigorously contends that appellant cannot be made a preferred creditor because he is an officer of the corporation. This contention is disputed in the case of Harle-Haas Drug Co. v. Rogers Drug Co., supra. The Wyoming court discussed cases from several jurisdictions concerning advisability of directors' securing preferred status over other creditors. The conclusion reached may be summarized in saying that a director who in good faith advances funds to a corporation may secure the same place of preference as could any other creditor.

■ Turning our attention to the circumstances of the parties herein at the time the mortgage was executed, appellant loaned LaVoy Supply Company an additional $8,000 which was included in the note and mortgage with the amount of the open note and the amount paid for his stock. The $8,000 is sufficient consideration for alteration of the status of the existing debt and the preferred status of the amount paid in the stock repurchase.

Attention is also invited to I.C. sec. 30-142, "Relation of directors and officers to corporation." It is apparent that the trust fund theory has no applicability to the facts of this case.

The judgment is reversed with instructions to enter judgment for appellant.

Costs to appellant.

SMITH, C. J., and TAYLOR, KNUDSON, and McFADDEN, JJ., concur.