**TRIUMPH SMOKES, INC., Appellant,**

v.

**George SARLO et al., Appellees.
No. 623.**

Court of Civil Appeals of Texas,
Tyler.

June 29, 1972.

Rehearing Denied July 20, 1972.

Wynne & Wynne, Ben Monning, Jr., Wills Point for appellant.

Atwell, Malouf, Musslewhite & Bynum, Dan M. Cain, Dallas, for appellees.

MOORE, Justice.

Appellant, Triumph Smokes, Inc., seeks a reversal of a summary judgment granted appellees George Sarlo and James C. Currey. Appellee, George Sarlo, alleged that he was the owner and holder of two non-subordinated debentures issued by the appellant corporation in the face amount of $24,141.44 and $3,335.14. Appellee James

C. Currey alleged that he was the owner and holder of a non-subordinated debenture issued by appellant in the face amount of $42,244.00. Appellees further alleged that the debentures were due and unpaid. Appellant, Triumph Smokes, Inc., answered with a general denial. Appellees filed a motion for summary judgment alleging that the pleading and other summary judgment evidence failed to raise a dispute upon any material issue of fact and that appellees were therefore entitled to a summary judgment as a matter of law as provided by Rule 166–A, Texas Rules of Civil Procedure. After a hearing the trial court rendered a summary judgment in favor of appellee George Sarlo for the sum of $27,476.58 and in favor of appellee James C. Currey for the sum of $42,244.00. Appellant, Triumph Smokes, Inc., duly perfected this appeal.

The facts are undisputed. W. S. Wells, President of Triumph Smokes, Inc., testified by affidavit that the company issued the debentures to George Sarlo "to redeem from him 3,762 shares of Common Stock, 200 shares of Preferred Stock, and to reimburse him for his payment of a 14,000 dollar loan plus 650.63 dollar interest made to the company by the National Bank of Commerce guaranteed by Mr. Sarlo"; that "the debenture was issued to Mr. James C. Currey to redeem from him 42,244 shares of Common Stock." He further stated in his affidavit that "at the time the debentures were issued, this company had no earned surplus and has not had any since that time. The decision to issue the debenture to plaintiff was made by the directors at a meeting held on June 10, 1969, and not by the stockholders." It is undisputed that the debentures are past due and unpaid.

Both parties concede that no disputed issue of fact exists and that the entire controversy amounts to a legal question involving the statutory authority of the corporation to repurchase its own stock.

Appellant, Triumph Smokes, Inc., urges that the trial court erred in granting a summary judgment against it because of the provisions of the Business Corporation Act, Article 2.03, V.A.T.S., declaring that a corporation shall not purchase its own stock except to the extent of the earned surplus available therefor. Appellant takes the position that since it had no earned surplus at the time of the purchase or at any subsequent time, the corporate act in issuing the debentures in payment for the stock was illegal and void. We affirm the judgment of the trial court.

Article 2.03 of the Texas Business Corporation Act, supra, provides in part, as follows:

"A. A corporation shall not purchase directly or indirectly any of its own shares unless such purchase is authorized by this Article and not prohibited by its articles of incorporation.

"B. A corporation may purchase its own shares to the extent of the aggregate of any unrestricted surplus available therefor and its stated capital when the purchase is authorized by the directors, acting in good faith to accomplish any of the following purposes:

"(1) To eliminate fractional shares.

"(2) To collect or compromise indebtedness owed by or to the corporation.

"(3) To pay dissenting shareholders entitled to payment for their shares under the provisions of this Act.

"(4) To effect the purchase or redemption of its redeemable shares in accordance with the provisions of this Act.

"C. Upon resolution of its board of directors authorizing the purchase and upon compliance with any other requirements of its articles of incorporation, a corporation may purchase its own shares to the extent of unrestricted earned surplus available therefor if accrued cumulative preferential dividends and other current preferential dividends have been fully paid at the time of purchase."

Article 2.04 of the Act abolishes "lack of capacity" of a corporation as the basis of a defense at law or in equity. Inter-Continental Corporation v. Moody, 411 S.W.2d 578 (Tex.Civ.App., Houston, 1966, ref., n. r. e.).

Appellant contends that since no earned surplus was available for the purchase of the stock, Article 2.03, supra, makes the action of the board of directors illegal and therefore the debentures are void and unenforceable. Appellees take the position that the repurchase of the stock was merely ultra vires. Consequently they argue that Article 2.04, supra, prohibits appellant from urging lack of capacity as a defense. Thus, we have this question: Was the repurchase of the stock under the circumstances illegal and void? We have concluded that it was not.

■ A distinction is to be made between the act of a corporation which is merely without authority, and one which is illegal. In the one case, it is a question of authority; in the other, of legality. A corporate act becomes illegal when committed in violation of an express statute on a specific subject. Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994.

■ Before the enactment of the Texas Business Corporation Act in 1955, there was no statutory prohibition against a corporation purchasing its own stock. By the enactment of Article 2.02, subd. A(8) of the act, the legislature specifically conferred power on corporations to purchase their own stock. This statute, by its own wording, constitutes a grant of such power. Article 2.03(c) of the act likewise recognizes that a corporation has power to purchase its own stock but restricts such purchases to the extent of its unrestricted earned surplus. The legislature did not declare that the repurchase by the corporation when no earned surplus was available therefor, would render the transaction void. Had such been the intention of the legislature it would have been easy to make it manifest. Thus

it appears that Article 2.03(C) amounts only to a limitation upon the power granted, not to a positive prohibition. Whitten v. Republic National Bank of Dallas, 397 S.W.2d 415 (Tex.Sup., 1965). This, we think, is made clear because of Article 2.41, subd. A(2) of the Texas Business Corporation Act, which provides as follows:

"A. (2) Directors of a corporation who vote for or assent to the purchase of its own shares contrary to the provisions of this Act shall be jointly and severally liable to the corporation for the amount of consideration paid for such shares which is in excess of the maximum amount which could have been paid therefor without violating the provisions of this Act."

■ If Article 2.03(C), supra, should be construed as declaring that the repurchase of stock by a corporation, when no earned surplus was available, was to be unlawful and void, then the provisions of Article 2.41, subd. A(2) would be meaningless. Obviously the corporation could not recover from the directors if the transaction was illegal and void. Thus, we are of the opinion that the repurchase of the stock in this instance was not illegal and that the debentures issued in payment for the stock are enforceable.

■ The general rule is that the validity of a purchase by a corporation of its own stock may be attacked only by persons who are injured or whose rights are prejudiced thereby. The validity of the purchase may not be attacked by the corporation itself. Article 2.04, Texas Business Corporation Act, V.A.T.S.; Lanpar Company v. Stull, 405 S.W.2d 235 (Tex.Civ.App., Waco, 1966, writ ref., n. r. e.); Cavitch, Business Organizations, Sec. 147.04(3); La Voy Supply Co. v. Young, 84 Idaho 120, 369 P. 2d 45 (1962), citing 6A Fletcher, Cyclopedia Corporations (1950 revision), sec. 2861, pp. 413–415.

The judgment of the trial court is affirmed.