358 So.2d 211 (1978)
NAPLES AWNING & GLASS, INC., a Florida Corporation, Appellant,
v.
L.R. CIROU, Appellee.
No. 77-1465.
District Court of Appeal of Florida, Second District.
April 5, 1978.
Rehearing Denied May 24, 1978.
*212 Robert E. Doyle, Jr., Asbell, Hains & Doyle, Naples, for appellant.
John L. Laskey of Treadwell, Emerson & Elkins, Naples, for appellee.
BOARDMAN, Chief Judge.
Appellant/defendant, Naples Awning & Glass, Inc.,[1] appeals the final judgment of foreclosure of a mortgage on real property securing payment of a promissory note. The note was executed by Naples in partial payment for the purchase of stock in the corporation held by appellee/plaintiff, L.R. Cirou. We hold that the obligation was void because Naples had insufficient capital surplus to make the purchase, and we reverse.
Cirou was one of the two shareholders in Naples and a director and secretary-treasurer of the corporation on September 17, 1975 when an agreement between Naples and Cirou to purchase Cirou's stock in the corporation was approved. In consideration for the sale of his stock Cirou was to receive $10,000 in cash, the insurance policy the corporation maintained on his life which had a cash surrender value of $5,370, cancellation of the debts he owed to the corporation in the amount of $25,110, and a note for $165,000 with a mortgage securing payment of the note. Thus, Cirou received a total in cash or its equivalent of $40,480 plus the note.[2]
According to the undisputed testimony of the certified public accountant presented as a witness by appellant, on August 31, 1975 Naples had a surplus of assets over liabilities of $29,000 and this figure did not change significantly during the month of September 1975. The consideration exclusive of the value of the note and mortgage received by Cirou on the date the agreement was executed exceeded the surplus by approximately $11,000.
After making several payments on the note Naples defaulted which led to the filing of this suit for foreclosure by appellee. *213 Appellant filed an answer and counterclaimed for rescission of the stock purchase agreement.
Under English law a corporation has no power to purchase shares of its own stock under any circumstances or conditions. In the United States, either by statute or by decisional law, most states permit the acquisition of shares of its own stock by a corporation. C. Nadler, Florida Corporation Law § 128 (1961). The Florida Supreme Court has determined that absent a statutory or charter prohibition a corporation is at liberty to purchase its own shares. Hayes v. Belleair Development Co., 120 Fla. 326, 162 So. 698 (1935). By adoption of the Corporation Act of 1925 the Florida legislature precluded a corporation from purchasing shares of its own stock. The Act was subsequently amended to allow a corporation to purchase its own shares under certain conditions. Section 608.13(9)(b), Florida Statutes (1973). Section 608.13(9)(b) provided that a corporation may
[p]urchase, hold, sell and transfer shares of its own capital stock, provided that no corporation shall purchase any of its own capital stock except from the surplus of its assets over its liabilities including capital. Shares of its own capital stock owned by the corporation shall not be voted directly or indirectly, or counted as outstanding for the purpose of any stockholders' quorum or vote.[3]
There are no Florida cases construing Section 608.13(9)(b), although a federal district court had occasion to do so in Baxter v. Lancer Industries, Inc., 213 F. Supp. 92 (E.D.N.Y. 1963), appeal dismissed, 324 F.2d 286 (2d Cir.1963). As that court explained:
The purpose of this type of statute is the protection of the corporate creditors and the other shareholders. Corporate power to purchase its own stock has been frequently abused. When done by faltering corporations it was oft intended to create preferences to the detriment of creditors and the remaining shareholders. Such statutes seek to preserve the margin of safety supplied by the real value of contributed capital. Mountain State Steel Foundries v. C.I.R. [284 F.2d 737 (4th Cir.1960)]. The withdrawal of assets by a shareholder on sale of his shares [of assets] to the corporation has the same effect upon creditors as the payment of a dividend and should thus be allowed only when the corporation could properly declare a dividend. See Mindenberg v. Carmel Film Productions, 132 Cal. App.2d 598, 282 P.2d 1024 (1955). See Fla.Ann. Stat. § 608.54.
213 F. Supp. 92, 96. We agree with this analysis.
An agreement for purchase by a corporation of its own stock which fails to comply with the conditions for sale imposed by statute is void and thereby unenforceable. In Cunningham v. Jaffe, 251 F. Supp. 143 (D.S.C. 1966), a stock purchase agreement was held to be void because it was in violation of the Delaware statute pertaining to purchase by a corporation of its own stock. The statute considered in Cunningham provided that:
Every corporation organized under this chapter may purchase, hold, sell and transfer shares of its own capital stock; but no such corporation shall use its funds or properties for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation.
251 F. Supp. 143, 152. The leading case interpreting the Delaware statute, In re International Radiator Co., 10 Del. Ch. 358, *214 92 A. 255 (1914), held that the phrase "impairment of capital" meant
the reduction of the amount of the assets of the company below the amount represented by the aggregate outstanding shares of the capital stock of the company. In other words, a corporation may use only its surplus for the purchase of shares of its own capital stock.
10 Del. Ch. 358, 360, 92 A. 255, 256.[4] The Florida and Delaware statutes are in effect, if not in exact terms, the same.
We conclude that under the 1973 statute a stock purchase agreement which at time of execution would require payment of an amount for the stock in excess of the corporation's "surplus of its assets over its liabilities including capital" is void. Clearly, as Naples had insufficient surplus at the time of execution of the agreement, that agreement was unauthorized and void. The note and mortgage are unenforceable, and the corporation is entitled to recover the value of all consideration paid to Cirou pursuant to the agreement including both the consideration given at the time the agreement was executed and all subsequent payments on the note. Cirou, of course, is entitled to the return of his stock.
Reversed and remanded for further proceedings consistent with this opinion.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] It appears from the record that this cause is being pursued by the assignee for the benefit of creditors of the corporation.
[2] Appellant claimed that an automobile given to Cirou by the corporation was also included in the agreement. Cirou, however, testified that the car was not part of the consideration he received for his stock. Since there is a conflict in the testimony and the agreement does not specifically mention any automobile, we do not consider the automobile as part of the consideration for the purposes of this decision. This shall not preclude such a finding by the trial court on remand if the evidence warrants.
[3] This topic is also treated in the current Florida General Corporation Act in § 607.017, Fla. Stat. (1975), effective January 1, 1976. Because the transaction at issue here took place in September 1975 that statute was not in effect.
[4] For a discussion of the treatment of similar situations in other jurisdictions see Annot., 61 A.L.R.3d 1049 and Annot., 47 A.L.R.2d 758.