**Juanita M. FOSTER, Plaintiff,**

v.

**ALLIEDSIGNAL INC., Defendant.**

**No. Civ.A. 97–4232–CM.**

United States District Court, D. Kansas.

May 23, 2000.

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, for Juanita M Foster, plaintiff.

William C. Martucci, Eric W. Smith, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Patrick W. McGovern, Morristown, NJ, for Allied Signal Inc, defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter is presently before the court on defendant's motion for summary judgment (Doc. 54), plaintiff's motion for partial summary judgment (Doc. 60), and defendant's motion to strike an affidavit (Doc. 79). Plaintiff in this case claims that defendant terminated her employment in retaliation for her exercise of protected rights under the Kansas Workers Compensation Act. As set forth in more detail below, defendant's motion to strike is granted, defendant's motion for summary judgment is granted, and plaintiff's motion for partial summary judgment is denied.

### I. Facts

#### A. Background Events

Plaintiff Juanita Foster began working for defendant AlliedSignal, Inc. in 1979. On November 13, 1995, while working in the sheet metal assembly area, plaintiff sustained an injury when some parts in a tub shifted and hit her arm, causing her chair to roll out from under her. Plaintiff reported her injury to Gayle Coulson, an employee in the human resource department, who in turn called the company nurse, Robin Thompson. Ms. Thompson advised that plaintiff be given ibuprofen, directed that ice or heat be placed on the strain, and suggested that plaintiff lie down for a few minutes. After plaintiff was treated, she returned to work and finished her shift. Plaintiff's supervisor, Bob Trageser, was not in the plant at the time plaintiff sustained her injury.

On November 16, 1995, plaintiff sought treatment for her injuries from defendant's company doctor, Dr. Scott Steelman. After his examination, Dr. Steelman cleared plaintiff to continue with full duty in her current position. On November 21, 1995, plaintiff told Ms. Thompson that her back was hurting and that she wanted to go home. Ms. Thompson knew that plaintiff's back complaint was a result of her injury at work. The following day, plaintiff visited her personal physician, Dr. April Bremby, who at that time prescribed medications and physical therapy. Plaintiff continued to work the remainder of November 1995.

Plaintiff visited Dr. Bremby again on December 5, 1995. At this visit, Dr. Bremby executed a form requesting that plaintiff be placed on medical leave from December 1, 1995 through January 1, 1996. That same day, plaintiff delivered the request form to an unknown employee at the front desk. Then, on December 7, 1995, as a follow up to plaintiff's request for a medical leave of absence, Dr. Steelman examined plaintiff again. Ms. Thompson was present at the examination.

Dr. Steelman concluded that plaintiff was able to continue performing her job and denied plaintiff's request for a medical leave of absence. Dr. Steelman and Ms. Thompson recall advising plaintiff that day that her request for leave was denied, but plaintiff denies she was informed at that time.

Plaintiff failed to show up for work on December 8, December 11, and December 12. Plaintiff testified in deposition that she did not call in to defendant on either of those days, but plaintiff's attorney has since come forward with an affidavit, claiming that plaintiff did call defendant on December 12. In any event, defendant had an attendance policy that provided for discharge when an employee is absent for three consecutive days with no call or when an employee is absent eight or more days within the last 180 days of employment. Plaintiff had been absent on September 11 and 29, October 5, and December 1, 5, 6, 7, 8, 11, and 12. Pursuant to defendant's attendance policies, of which plaintiff was aware, Mr. Trageser spoke to plaintiff by phone on December 13, 1995, and advised plaintiff that her employment was terminated.

On December 4, 1995, plaintiff's attorney sent to defendant via certified mail a claim by plaintiff for workers compensation benefits. An unknown employee signed for the certified mail receipt on December 7, 1995. Plaintiff now claims that her termination was in retaliation for absences which were due to a work-related injury and for filing a workers compensation claim.

## B. Defendant's Policy on Communicating Medical Information

As a matter of policy at defendant's workplace, injured employees, supervisors, the medical department, and human resources are required to work together when an employee needs to be off work because of a work-related injury. However, defendant's medical department typically does not inform human resources or supervisory personnel regarding the details of treatment or the medical condition of injured employees because that information is considered private. The medical department advises human resources and supervisory personal only with respect to whether an employee is cleared to come back to work or whether an employee has any work-related restrictions.

When a medical leave of absence is denied, the medical department informs the human resources department either by e-mail or voice mail that the leave has been denied. The medical department later forwards to human resources a copy of the form indicating that the leave was denied. The actual request for leave form is not forwarded to human resources, and indeed that form states that the information contained therein is confidential and available only to the medical department.

## C. Knowledge of Relevant Personnel

Mr. Trageser, plaintiff's supervisor, and James Williams, plaintiff's human resource manager, made the decision to fire plaintiff. Mr. Trageser was aware plaintiff had reported a work-related injury in November 1995 because he did a follow up accident investigation sometime in November. Plaintiff reported to Mr. Trageser that she had reached for a tub and it just about fell, so she reached again and it caused some kind of backache. Following the injury on November 13, 1995, plaintiff continued working through November 30, 1995, and never complained to Mr. Trageser that her back was getting worse or that Dr. Steelman was not providing adequate treatment.

Mr. Trageser became aware sometime during the week of December 4, 1995, that plaintiff was attempting to get a medical leave of absence, but Mr. Trageser was not aware that plaintiff was requesting a medical leave due to a work-related injury. On December 7, 1995, Ms. Thompson advised Mr. Trageser that plaintiff had been denied a medical leave of absence and that

plaintiff was to return to work the following day. Ms. Thompson also advised Mr. Trageser that Ms. Thompson told plaintiff on December 7 that plaintiff's leave request was denied and that plaintiff had to return to work the following day. At some point prior to plaintiff's termination, Ms. Thompson also informed Mr. Williams that plaintiff's request for leave had been denied and that plaintiff had been advised that she was not authorized to be off work. At the time of plaintiff's discharge, neither Mr. Trageser nor Mr. Williams was aware that plaintiff had filed a claim for workers compensation relating to her claimed injury of November 13, 1995.

## II. Motion to Strike Affidavit

Defendant has moved to strike the affidavit of plaintiff's counsel David Algeria. Attached as Exhibit 1 to plaintiff's memorandum in opposition to defendant's summary judgment motion, plaintiff attempts to introduce into the record certain pages from an alleged telephone log of plaintiff from Southwestern Bell Telephone Company for December 1995. Plaintiff's counsel argues that the alleged log demonstrates that plaintiff called defendant on December 12, 1995, which directly contradicts plaintiff's own deposition, wherein she testified that she did not speak with anyone at AlliedSignal between December 7 and December 13, 1995. The court notes that plaintiff produced the alleged log nearly three months after the close of discovery.

■ Foremost, plaintiff has failed to respond to defendant's motion to strike Mr. Algeria's affidavit. When a respondent fails to file a timely response, the court will ordinarily grant an uncontested motion without further notice. *See* D.Kan.Rule 7.4. For this reason, and for the reasons stated below, Mr. Algeria's affidavit is hereby stricken.

Fed.R.Civ.P. 56(e) sets forth the requirements for an affidavit submitted in support of a motion for summary judgment. The rule provides in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith....

■ Mr. Algeria's affidavit sets forth facts about which he has no personal knowledge and, therefore, such facts are inadmissible in evidence. Mr. Algeria states in his affidavit that the telephone log shows that "[plaintiff] called defendant at (913) 842–0406, two times on December 12, 1995." Mr. Algeria has no personal knowledge regarding whether plaintiff telephoned defendant on that day and, in fact, plaintiff herself, who does have personal knowledge, testified under oath that she did not. Mr. Algeria lacks the requisite personal knowledge and is not, therefore, competent to testify.

Mr. Algeria also attaches a purported telephone log in support of his affidavit. Mr. Algeria is not competent to testify as to the attached telephone log because he has no personal knowledge of any of the information contained therein, the document's source, or its authenticity. Affidavits of attorneys who lack personal knowledge of information related in supporting documentation are not entitled to consideration on a summary judgment motion. *See Sellers v. MC Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988).

■ Further, unauthenticated documents constitute hearsay and hearsay testimony that would not be admissible at trial cannot be included in a Rule 56(e) affidavit. *See Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir.1995). Accordingly, business records, which normally would be admissible at trial under the hearsay exception, may be considered to avoid summary judgment only if authenticated by a person through whom the exhibits could be admitted into

evidence. *See IBP, Inc. v. Mercantile Bank of Topeka,* 6 F.Supp.2d 1258, 1263 (D.Kan.1998). Mr. Algeria does not attempt to authenticate the attached telephone log, nor could he unless he claimed personal knowledge of the log, its origin, and how the log was generated or kept. For all these reasons, the court strikes Mr. Algeria's affidavit and attached document.

## III. Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* at 671 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 1).

### B. Discussion

Under Kansas law, an employer may discharge an employee-at-will for good cause, no cause, or even for wrong cause without being subject to liability. *See Allsup v. Mount Carmel Med. Ctr.,* 22 Kan.App.2d 613, 617, 922 P.2d 1097, 1100 (1996). The exception to this rule is based on public policy. Accordingly, an employer may not discharge an employee in retaliation for filing a workers compensation claim, *see Murphy v. City of Topeka-Shawnee,* 6 Kan.App.2d 488, Syl. ¶ 7, 630 P.2d 186, 188 (1981), or for being absent or not calling in because of a work-related injury, *see Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, Syl. ¶ 3, 752 P.2d 645, 645–46 (1988).

The burden rests with the plaintiff to prove that the defendant discharged her in retaliation for filing a claim under the Kansas Workers Compensation Act. *See Ortega v. IBP, Inc.,* 255 Kan. 513, 528,

874 P.2d 1188, 1197 (1994). The plaintiff can recover upon "proving that the discharge was 'based on,' 'because of,' 'motivated by' or 'due to' the employer's intent to retaliate." *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1298 (10th Cir.1998). The plaintiff must establish her claim "by a preponderance of the evidence, but the evidence must be clear and convincing in nature." *Ortega,* 255 Kan. at 528, 874 P.2d at 1198. Evidence is clear if "it is certain, unambiguous, and plain to the understanding," and convincing "if it is reasonable and persuasive enough to cause the trier of fact to believe it." *Id.*

### 1. *McDonnell Douglas* Theory of Proof

▉▉▉▉ In analyzing state retaliatory discharge claims in Kansas, the federal courts apply the burden shifting approach established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sanjuan,* 160 F.3d at 1298. Under the burden shifting approach, a prima facie case raises " 'a rebuttable presumption' " of a retaliatory intent. *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir.1994). To establish a prima facie case of retaliatory discharge under Kansas law, a plaintiff must produce evidence demonstrating: (1) that the plaintiff filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that the plaintiff had sustained a work-related injury for which he might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury and the termination. *See Sanjuan,* 160 F.3d at 1298.

Once the plaintiff employee establishes a prima facie case, the burden of production shifts to the defendant to rebut the presumption by offering a legitimate, nonretaliatory motive for the discharge. If rebutted, the presumption drops out of the case, and the plaintiff must carry the full burden of persuasion of proving by a preponderance of the evidence, which is clear and convincing in nature, that the defendant acted with retaliatory intent. *See Ingels,* 42 F.3d at 621.

### 2. Prima Facie Case of Retaliatory Discharge

In this case, defendants argue that plaintiff cannot establish a prima facie case of retaliatory discharge. Plaintiff, on the other hand, asserts that she is entitled to summary judgment on the issue of liability. Defendant does not dispute the first three elements of plaintiff's prima facie case but contends that plaintiff cannot present clear and convincing evidence that any causal connection exists between plaintiff's exercise of her protected rights and her termination.

▉▉▉▉ Under Kansas law, an employer may be liable for discharging an employee in retaliation for being absent from work due to a work-related injury. *See Ortega,* 255 Kan. at 516, 874 P.2d 1188. This requires proof that, at the time of the discharge, defendant knew or should have known the absences for which the plaintiff was being fired were the result of a work-related injury. *See Ramirez v. IBP, Inc.,* 913 F.Supp. 1421, 1436 (D.Kan.1995); *Bausman v. Interstate Brands Corporation,* 50 F.Supp.2d 1028, 1042–43 (D.Kan. 1999). Such evidence is key in establishing the that a causal connection existed between the work-related absences and the termination.

To establish a prima facie case of retaliation, plaintiff must show that the individuals actually undertaking the alleged retaliatory acts were aware of plaintiff's participation in the protected activity. *See Williams v. Columbia/HCA Healthcare Corp.,* No. 98–2084–JTM, 1999 WL 592674, at *5 (D.Kan. July 30, 1999). Summary judgment is therefore appropriate "where a plaintiff alleging retaliation fails to provide any evidence that any per-

son involved in the adverse employment action knew she had engaged in protected conduct." *Id.* (*citing Fenton v. HiSAN, Inc.,* 174 F.3d 827, 832 (6th Cir.1999); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 797 (9th Cir.1982); *Carter v. Pena,* 14 F.Supp.2d 1, 10 (D.D.C.1997); *Lacy v. Bentsen,* 859 F.Supp. 1039, 1043 (E.D.Mich.1993), *aff'd,* 25 F.3d 1049 (6th Cir.1994); *Long v. AT & T Info. Sys., Inc.,* 733 F.Supp. 188, 205 n. 22 (S.D.N.Y. 1990)).

■ In this case, it is undisputed that Mr. Trageser and Mr. Williams made the decision to fire plaintiff. There exists no evidence in the record that either Mr. Trageser or Mr. Williams knew plaintiff was absent due to an alleged work-related injury. The central issue is, therefore, whether Mr. Trageser and Mr. Williams should have known plaintiff's absences resulted from a work-related injury.

Mr. Trageser became aware during the week of December 4, 1995, that plaintiff was seeking a medical leave of absence, although he was not informed as to the nature of the injury, and was accordingly notified that plaintiff's request was denied. But Mr. Trageser knew that plaintiff had been injured just weeks earlier on the job. As such, there exists a dispute as to whether Mr. Trageser should have known that plaintiff's request for a medical leave resulted from her ongoing symptoms caused by her work-related injury. At the very least, a genuine issue exists regarding whether Mr. Trageser or Mr. Williams should have inquired from Ms. Thompson the circumstances surrounding plaintiff's medical condition that prompted plaintiff's leave request. Because there exists an issue of material fact regarding whether Mr. Trageser or Mr. Williams should have known that plaintiff's absences were the result of her work-related injury, this court cannot determine as a matter of law whether plaintiff has, or has not, established a prima facie case of retaliation.

### 3. Pretext

Notwithstanding that a factual dispute exists regarding the causal-connection element of plaintiff's claim, summary judgment is appropriate. Plaintiff has failed to bring forth any evidence that defendant's articulated reasons for her discharge were a pretext for a retaliatory motive. Defendant's articulated reasons for plaintiff's discharge were that she violated two attendance policies.

It is undisputed that defendant's attendance policy provides that three consecutive days of absence without calling is considered job abandonment and results in automatic discharge. Plaintiff further does not dispute defendant's attendance policy also provides that, if an employee is absent eight days or more in any 180–day period, discharge is appropriate. Plaintiff's absences on December 8, 11, and 12, coupled with her failure to call in on those days, violated defendant's job abandonment rule. Plaintiff's absences on September 11 and 29, October 5, and December 1, 5, 6, 7, 8, 11, and 12 placed her in violation of the attendance policy and also warranted termination of her employment.

Plaintiff has failed to present clear and convincing evidence that she was not in violation of defendant's attendance policies. Plaintiff does claim that she was not advised on December 7 during her examination by Dr. Steelman that her leave of absence had been denied and that she needed to return to work. Taking plaintiff's version of the facts as true, such evidence does not establish that the application of the attendance and job abandonment policies by Mr. Trageser and Mr. Williams was an attempt to conceal a retaliatory motive. Rather, plaintiff's evidence, at most, suggests that defendant's policies may have been mistakenly applied in her case, which is not enough to establish pretext. *See Robinson v. Wilson Concrete Co.,* 913 F.Supp. 1476, 1484 (D.Kan.1996) ("Even assuming that plaintiff has presented a prima facie case by showing that the ninth point was improperly assessed, plain-

tiff has not presented clear and convincing evidence that plaintiff's termination was improperly motivated by plaintiff's work-related injury."). Moreover, the timing of plaintiff's termination, alone, is insufficient to show by evidence of a clear and convincing nature that defendant's proffered non-retaliatory explanation for plaintiff's discharge was pretextual. *See id.* at 1485.

Finally, the court notes the complete lack of any evidence suggesting that Mr. Trageser or Mr. Williams were motivated by a retaliatory intent. Plaintiff concedes that she had no reason to think that Mr. Trageser was trying to retaliate against her and that Mr. Trageser had always treated her fairly. Moreover, plaintiff admits that there were no individuals at AlliedSignal that treated her unfairly. Because plaintiff has failed to set forth sufficient evidence to establish pretext, summary judgment is appropriate.

After carefully considering all of the evidence presented by plaintiff, this court finds that defendant is entitled to judgment as a matter of law on plaintiff's retaliatory discharge claim.

## IV. Summary of Court's Ruling

**IT IS ORDERED THAT** defendant's motion to strike the affidavit of David Algeria (Doc. 79) is granted.

**IT IS FURTHER ORDERED THAT** defendant's motion for summary judgment (Doc. 54) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's motion for partial summary judgment (Doc. 60) is denied.