In re LAKE COUNTRY INVEST-MENTS, Limited Liability Company, Debtors.

Joseph A. Esposito, Trustee, Plaintiff,

v.

John E. Noyes, Defendant.

Bankruptcy No. 99–20287.
Adversary No. 00–6057.

United States Bankruptcy Court,
D. Idaho.

Sept. 19, 2000.

---

**592**

Joseph A. Esposito, Esposito Tombari George Topliff & Campbell, P.S., Spokane, Washington, for Plaintiff.

R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, Idaho, for John Noyes and Alicia Noyes.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### I. INTRODUCTION

Lake Country Investments LLC ("Lake Country") was formed in the latter part of 1996. The members and equal owners of this limited liability company are Agincourt, LLC ("Agincourt") and Arrow Point Development Company ("APDC"). West Wood Investments, Inc. ("West Wood") owns 99% of Agincourt. West Wood is a creditor of Lake Country and was the petitioning creditor in the involuntary petition which gave rise to the chapter 11 case.

Joseph Esposito, the chapter 11 Trustee of Lake Country ("Esposito" or "Trustee") brings this adversary proceeding against John and Alicia Noyes ("Noyes")[1]. He asserts four claims for relief.[2] Noyes moves pursuant to Fed.R.Civ.P. 56, incorporated by Fed.R.Bankr.P. 7056, for summary judgment on all four counts. Noyes has also objected to and moved to strike certain affidavits in opposition to the motion for summary judgment which were submitted by Esposito or others on his behalf.

All these matters were argued on June 14 and taken under advisement subject to Esposito's supplemental briefing concerning (a) Noyes' motion to strike portions of an affidavit of accountant Stanley Short, and (b) the issue of the amendment of certain implicated provisions of the Idaho Code relating to business corporations. Those submissions, and Noyes' reply thereto, have now been made.

Before reaching the summary judgment issues, the Court must first determine the extent of the record which may properly be considered.

### II. THE RECORD[3]

#### A. As presented by the moving party

Noyes moved for summary judgment based upon the pleadings of record (the

---

1. For ease of exposition, the Noyes will be referred to in the singular.

2. The counts are, first, for equitable subordination under § 510; second, for avoidance of fraudulent conveyance under Idaho Code § 55–901, *et seq.;* third, for avoidance of illegal corporate distribution under Idaho law; and, fourth, for a determination that Noyes' secured claim in Lake Country's chapter 11

case has no value due to the existence of senior liens on the same real property collateral.

3. Part II of this decision addresses only the composition of the record before the Court on the motion for summary judgment. The factual matters asserted by the parties will be discussed in Part IV.

complaint, and the answer and counter-claim[4]) and an affidavit of John Noyes to which several documents are attached.

### B. As presented by (or for) the non-moving party

Noyes' motion triggered Esposito's duty to respond under Rule 56(e), which provides:

(e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Esposito relies upon several submissions in defense of the motion.

### 1. The Esposito declaration

Esposito signed and filed a declaration in which he declares he is the Trustee for Lake Country and attorney for Plaintiff. He avers nothing at all in regard to his personal knowledge, or his competency to testify. The substance of his declaration states:

2. In response to discovery requests propounded to Source Capital Corporation, files of Source Capital with respect to an Arrow Point Development Company loan were obtained. Various documents were produced, copied and delivered to defendant Noyes['] attorney. The following documents are true and correct copies of documents obtained from the file[.]

What follows is a listing of eight documents, all of which are attached as exhibits. No other assertions are made in the declaration.

### 2. The Fasnacht affidavit

An affidavit of Robert J. Fasnacht was filed in opposition to the Noyes' summary judgment motion. This pleading was filed not by the Trustee, but by West Wood.[5] Attached to Fasnacht's affidavit are numerous documents.

The affirmative representations of this affidavit are as follows. First, Fasnacht alleges that he makes the affidavit "upon personal knowledge, and [is] competent to testify as to all matters contained herein." *Id.* at ¶ 1. He then states that, in his capacity as one of several attorneys for West Wood, he served multiple document production subpoenas upon Arrow Properties Partnership, Century 21 John Beuler Associates, Pioneer Title Company of Kootenai County, Arrow Point Joint Venture, and Brown & Delaney Certified Public Accountants. In regard to each such identified entity, he asserts that an attached exhibit represents "true and accurate copies of documents that I retrieved from [that entity's] files as their business records." *Id.* at ¶ 3.

---

4. The counterclaim is not presently at issue.

5. The attorneys who filed the Fasnacht affidavit are from the firm of Karr Tuttle Campbell. They are counsel of record for West Wood in other adversary litigation before the Court.

Fasnacht is an attorney for West Wood, primarily in the Idaho state courts. As discussed later in this opinion, West Wood is not a party to the instant adversary proceeding.

The only exhibits not falling within this sort of foundational approach are those in Exhibit F, which Fasnacht alleges were documents obtained by his client, West Wood, from Noyes. *Id.* at ¶ 4.

### 3. The Morse affidavit

West Wood also filed an affidavit of Ed Morse in opposition to Noyes' motion. Morse is an appraiser, and testifies as to his opinion of value for several condominium units and related real estate assets of Lake Country, some of which were previously owned by APDC.

### 4. The Short declaration

Esposito also filed a declaration of Stanley Short in opposition to Noyes' summary judgment motion. Short is a certified public accountant, and his affidavit focuses on the issue of the insolvency of APDC in late 1995 and early 1996. The affidavit is allegedly premised on Short's review of APDC books and records, including those produced by accountants Brown & Delaney in response to discovery requests. It also appears that Short reviewed documents attached to the Esposito declaration and Fasnacht affidavit.

### C. Motion to strike

Noyes objects to the Court's consideration of the Esposito declaration and its attachments on the basis that compliance with Rule 56(e) is lacking and that Esposito lacks the ability to testify from personal knowledge as to the factual matters asserted or to properly support consideration of the documents he proffers.

Noyes also objects to the Court's consideration of the Fasnacht affidavit on this same basis, alleging that Fasnacht has not established personal knowledge necessary to support consideration of the voluminous documents produced by other entities in response to discovery. Noyes also objects to the Court's considering the Fasnacht affidavit since it was filed by West Wood,

which is not a party to this adversary proceeding.[6]

Noyes asks the Court to strike both the Fasnacht affidavit and the Esposito declaration in their entirety.

Noyes also objects to and moves to strike the Short declaration, in part and not in whole, to the extent that the opinions rendered are based upon speculation or upon factual assumptions not otherwise established by the record now before the Court.

### 1. Disposition of the motion to strike

#### a. Esposito declaration and Fasnacht affidavit

■ Rule 56(e) requires that the affidavits be "made on personal knowledge," that they set forth facts admissible in evidence, and that they affirmatively show that the affiant is qualified to testify to the matters set forth.

Neither the Fasnacht affidavit nor the Esposito declaration establishes that the declarant is competent to testify as to factual matters at issue in the litigation, or could competently testify as to the provenance of documents attached as exhibits.

■ The Bankruptcy Appellate Panel has held:

> Affidavits by attorneys which do not comply with the personal knowledge requirement [of Rule 56(e)] cannot be used in opposition to a summary judgment motion.... An affidavit not based on personal knowledge is to be disregarded when considering a summary judgment motion.

*Grzybowski v. Aquaslide Ǹ' Dive Corporation (In re Aquaslide Ǹ' Dive Corporation),* 85 B.R. 545, 548 (9th Cir. BAP 1987) (citations omitted). In *Foster v. AlliedSignal Inc.,* 98 F.Supp.2d 1261 (D.Kan.2000), the court similarly refused to consider an attorneys' testimonial assertions in an affidavit which failed to establish personal knowledge. 98 F.Supp.2d at 1265. That

---

6. The Morse affidavit was also filed by West Wood. It would therefore appear to be subject to the same objection. However, Noyes did not move to strike the Morse affidavit.

court also refused to consider documents attached to the attorney's affidavit:

> [Counsel] is not competent to testify as to the attached telephone log because he has no personal knowledge of any of the information contained therein, the document's source, or its authenticity. Affidavits of attorneys who lack personal knowledge of information related in supporting documentation are not entitled to consideration on a summary judgment motion. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988).
>
> . . .
>
> Accordingly, business records, which normally would be admissible at trial under the hearsay exception, may be considered to avoid summary judgment only if authenticated by a person through whom the exhibits could be admitted into evidence. *See IBP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258, 1263 (D.Kan.1998). [Counsel] does not attempt to authenticate the attached telephone log, nor could he unless he claimed personal knowledge of the log, its origin, and how the log was generated or kept. For all these reasons, the court strikes [Counsel's] affidavit and the attached document.

98 F.Supp.2d at 1265–66.

■ It is evident from the affirmative representations of both the Fasnacht affidavit and Esposito declaration that neither individual is competent to testify as to the substance of the voluminous documents they attach. All that Fasnacht and Esposito can establish is that they received documents from some other, non-party entity. In Fasnacht's case, the documents primarily come from non-parties in response to discovery.[7] In Esposito's case, the documents come from an unknown source.[8] There is no apparent basis upon which either Mr. Esposito or Mr. Fasnacht can affirm the genesis or authenticity of, or testify as to the information within, any of the documents.

■ The Court concludes that the Fasnacht affidavit and the Esposito declaration fail to meet the requirements of Rule 56(e).[9] Noyes' motion to strike will be granted.[10]

### b. Short declaration

Noyes, while conceding that Short is competent to testify as an accounting ex-

7. This is true with the exception of the documents attached as Exhibit F to the affidavit which Fasnacht asserts his client, West Wood, obtained from Noyes. Still, nothing shows that Fasnacht's testimony could lay the necessary foundation for admission of these documents.

8. Esposito's declares that the Source Capital documents "were produced, copied and delivered to Noyes[] attorney." He doesn't say where he obtained them, nor does he establish they are somehow "admissions" of Noyes.

9. As noted above, the Fasnacht affidavit was filed not by the Plaintiff Trustee but by West Wood, a creditor in the main chapter 11 case and a plaintiff in another adversary proceeding against Noyes, Adversary No. 00–6064. West Wood is entitled to be heard in the chapter 11 case. § 1109(b). It is of course free to file in that case, or in its own adversary proceeding, any and all pleadings appropriate under the rules. But it has no standing to file affidavits in the Trustee's law suit. This provides an additional basis for refusing to consider the Fasnacht affidavit.

Additionally, the same attorneys filed on June 13 a "Response of West Wood and Agincourt in Support of Esposito's Opposition to Noyes' Motion for Summary Judgment." They state that these creditors "submit this memorandum both to amplify the arguments made by the Trustee and to raise a few additional points." *Id.* at p. 2. Absent leave of court, non-parties cannot kibitz through briefing any more than through filing affidavits. This submission shall also be ignored. *Accord, Agincourt v. Noyes*, Adv. No. 00–6064, Memorandum of Decision and Order of July 10, 2000, at p. 26, n. 23 (refusing to consider Esposito's non-party declaration in West Wood's suit).

10. Though not specifically assailed by Noyes, the Morse affidavit suffers from the same problem as the Fasnacht affidavit as it too was presented by West Wood. It will not be considered.

pert, objects to the Court's consideration of the Short declaration because "it is awash in speculation ... and conclusory allegations," because "it relies upon hearsay not within any exception", and because Short does not "have personal knowledge of the financial condition or organization of APDC, at or about the time of the transactions in question."[11]

Federal Rule of Evidence 703 provides that the facts, data or materials made known to and relied upon by experts in forming their opinions need not be admitted, or even be admissible if they are "of a type reasonably relied upon by experts in the particular field." *See, In re International Loan Network, Inc.,* 160 B.R. 1 (Bankr.D.Dist.Col.1993); *see also, International Adhesive Coating Co. v. Bolton Emerson International, Inc.,* 851 F.2d 540, 545 (1st Cir.1988). Thus even if the documents attached to Fasnacht's affidavit and Esposito's declaration are not before the Court, Short can review those materials, as well as APDC documents, in forming his opinion.

The materials he reviewed, or other facts or data he relied upon, in reaching and rendering such opinion may be subject to disclosure and cross examination. Fed.R.Evid. 705. But whether Short's opinion can be impeached or ultimately proven unpersuasive is not today at issue. The Court's charge under Rule 56 is only to determine whether or not Esposito has shown the existence of a genuine issue of material fact sufficient to withstand dismissal. The element of the alleged insolvency of APDC is potentially relevant to one or more of the causes of action. Short's declaration goes to this

issue.[12] Noyes' motion to strike this declaration will be denied.

## F. Esposito's "request" under Rule 56(f)

When Noyes' motion was first filed, supported and noticed for hearing, Esposito asked the Court for a continuance in order to prepare the necessary rebuttal pleadings as required by Rule 56. That request was granted with the agreement of Noyes, and hearing on the matter postponed.

Noyes thereafter attacked the affidavits and declarations relied upon by Esposito. Noyes' motion to strike was heard simultaneously with the summary judgment motion. At the conclusion of the hearing, Esposito was granted leave to file a reply brief regarding (a) Noyes' motion to strike portions of the Short declaration, and (b) Noyes' arguments concerning the effect of amendment of certain Idaho corporate code provisions.

Esposito availed himself of this opportunity. A letter[13] was submitted making those rebuttal arguments. It also addressed the motions to strike the Esposito and Fasnacht affidavits. Esposito concluded the letter by stating:

> If the court finds that the assertions made by defendant are of some merit, then the court should under Rule 56(F) [*sic*], grant a continuance to permit additional affidavits to be obtained or additional depositions to be taken, and additional discovery to be had.

*Id.* at p. 2. Noyes, in his Supplemental Reply Memorandum in Support of Motion for Summary Judgment, objects to the request.

Esposito previously asked for, and was allowed, additional time within

---

11. Reply Memorandum in Support of Summary Judgment, at p. 11.

12. Paragraph 3 of the Short affidavit, and the several paragraphs that follow, address APDC's solvency. Short is entitled to opine on the ultimate issue to be decided. Fed.R.Evid. 704(a). While the Court would agree with Noyes' contention that paragraphs 23, *et*

*seq.,* of the declaration are conjectural, and thus are entitled to little weight, this does not require the rejection of the entire submission.

13. The Court has caused the letter to be lodged as a docketed pleading in this action despite its improper form.

which to prepare to meet his burdens under Rule 56. If that time proved insufficient, there was an ability to request more time and forbearance pursuant to Rule 56(f).[14] However, that request must be made at a point prior to submission on the motion. Furthermore, Rule 56(f) requires the movant to set forth the particular facts expected to be garnered through additional discovery and to specify how those facts will prevent summary judgment. *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 989 (9th Cir.1999).

Esposito had an opportunity to make his request prior to hearing and submission of the summary judgment motion. He did not do so. As an afterthought, or perhaps as a hedge,[15] he included the request in his post-hearing letter. To the extent this letter seeks Rule 56(f) relief, it comes too late and fails to provide the submissions called for by that rule. It shall be denied.

### G. The resultant record

 Based on the foregoing, the Noyes affidavit and the Short declaration are the only submissions properly of record. The other declarations are stricken. Leave to supplement further under Rule 56(f) is denied. It is upon this record that the Court shall determine whether Esposito has successfully resisted summary judgment.[16]

## III. STANDARDS FOR GRANTING SUMMARY JUDGMENT

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Anguiano v. Allstate Insurance Company*, 209 F.3d 1167, 1169 (9th Cir.2000); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998).

The Court does not weigh the evidence in considering summary judgment. Rather, it determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997).

The initial burden of showing that there is no genuine issue of fact rests on the moving party. *Margolis*, 140 F.3d at 852. If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). Failure to sustain this burden as to any required element of a cause of action is fatal to that cause, even if issues are shown to exist as to other elements. A complete failure on one element necessarily renders the other elements "Immaterial" whether factually disputed or not. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

14. Rule 56(f) provides:
 (f) **When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

15. The letter requests the Court to consider granting more time to conduct discovery and marshal a defense only "if the court finds that the assertions made by the defendant are of some merit."

16. The Brief of Plaintiff in Opposition to Motion for Summary Judgment filed by Esposito has an extensive factual discussion. Assertions of counsel in briefing are not, however, facts. They are no more probative for summary judgment purposes than they are at trial. This factual discussion can be considered only to the extent that it refers to the admissions in the Defendants' answer, to the Short declaration, or to the documents which Noyes placed of record. Additionally, the several documents attached to this brief are not properly before the Court, and cannot be considered.

## IV. FACTS

From December 1993 through April 1995, Noyes loaned money to and was a creditor of APDC. As of August 1995, the loans aggregated $5,402,593. He was also, in 1995, a stockholder of APDC holding 172 shares. Noyes testifies that he contributed $1,800,000 in cash, plus real estate (of unstated value) for those shares.

An "Agreement for Redemption of Stock and Contribution of Note Obligations" (the "Agreement") was entered into by Noyes, members of the Stewart family[17] and APDC on February 9, 1996. Noyes characterizes the Agreement as providing for the surrender of all his notes and satisfaction of the related creditor claims, as well as surrender of all his stock and the related capital position in APDC, in return for $2,000,000 with $500,000 paid in cash and the balance reflected by a promissory note.[18] The note was secured by certain real estate of APDC.[19]

This real estate was subsequently transferred by APDC to Lake Country. Though the real estate remained subject to Noyes' mortgage, Lake Country did not assume the note and has no obligation to pay Noyes thereon. Noyes is therefore a non-recourse creditor of Lake Country by virtue of the secured claim against this real property.[20]

In regard to the timing of the transaction, the Agreement states that it was "entered into and [was] effective as of February 9, 1996." It further recites, at paragraph D on p. 1, that:

> ... Stewart desires, and Noyes has agreed, to have APDC redeem the Noyes Stock and, immediately prior to such redemption, to have the Noyes Notes and the Stewart Notes contributed to the capital of APDC, so that Stewart would own all outstanding stock of APDC, free of the obligations of the Noyes Notes and the Stewart Notes.

Additionally, an "Addendum" to the Agreement was entered into on February 9, which reflected the parties' agreement that the contemplated refinancing by Stewarts of the project[21] would be allowed to occur and close before the redemption of the Noyes stock was effected. It further states that "All parties agree that the contribution of the Stewart Notes and the Noyes Notes to the capital of APDC shall be deemed to have occurred on December 31, 1995." Addendum, at p. 1, paragraph 2.

Noyes views the Agreement as integrated, and providing for surrender and satisfaction of the loans (Noyes Notes) as well as equity (Noyes Stock) in return for $2,000,000. Esposito contends[22] that Noyes' surrender of the promissory notes and creditor position against APDC occurred in 1995, and Noyes was thereafter only a shareholder. Thus, according to

---

17. According to the Agreement, the Stewarts held the balance of the stock of APDC, and were also creditors of the corporation.

18. Noyes admits the cash received was actually $500,242. The note is actually in the amount of $1,584,375.

19. The mortgage covers 5 described parcels, which include condominium buildings in the development, as well as "the 80 acres." Noyes' mortgage was subordinated to a refinanced first position lien (described in the Agreement and mortgage as that of the "Stewart Lender") and to an Arrow Point Properties' secured position. It was also subject to a partial release provision.

20. Noyes admits the non-recourse nature of the obligation and concedes he has no unsecured claim against Lake Country.

21. The Agreement, at p. 2, indicated the Stewarts would contribute their notes to the capital of APDC, refinance the project and obtain a new loan not to exceed $4,500,000 and apply the funds from the refinance to pay Noyes, pay loan fees, pay off APDO's construction loan debt to U.S. Bank, pay off Source Capital, and pay current Idaho Forest Industries.

22. The Trustee's contentions are supported in the present record only by the transactional documents submitted by Noyes, and the testimony of Short who reviewed APDC documents and financial materials.

Trustee, the February 1996 Agreement accomplished only a redemption of Noyes' stock position in APDC for $500,000 in cash and the $1,584,375 secured note.

While Esposito acknowledges that the amount of the cash and note Noyes received in 1996 are far less than the amount of the capital position satisfied thereby, he contends that APDC was at that time insolvent. Thus Esposito contends that the 1996 transaction constituted an avoidable transfer, either under the Idaho statutes limiting corporate distributions to shareholders or redemption of stock, or under Idaho's fraudulent conveyance statutes.[23]

The Trustee brings his suit by standing in the shoes of Lake Country as an alleged creditor of APDC. Esposito is not exercising any of the powers granted trustees in bankruptcy cases[24] but, instead, asserts on behalf of Lake Country rights that he believes Lake Country had as a creditor of APDC at the time of the filing of the bankruptcy case.

## V. DISPOSITION OF MOTION FOR SUMMARY JUDGMENT

### A. Illegal Distribution

Esposito argues that the 1996 Agreement constituted an illegal stock redemption while the corporation, APDC, was insolvent. Thus, he asserts that it is void under Idaho law.

### 1. The applicable statutes

The complaint alleges at ¶ 3.12 that this claim for relief arises under Idaho Code § 30–1–640. This section was added by the 1997 recodification of the Idaho Business Corporations Act, § 30–1–101 *et seq.*, which went into effect on July 1, 1997. Section 30–1–640 provides in pertinent part:

**30–1–640. Distributions to shareholder.—**

(1) A board of directors may authorize and the corporation may make distributions to its shareholders subject to restriction by the articles of incorporation and the limitation in subsection (3) of this section.

. . .

(3) No distribution shall be made if, after giving it effect:

(a) The corporation would not be able to pay its debts as they become due in the usual course of business; or

(b) The corporation's total assets would be less than the sum of its total liabilities plus, unless the articles of incorporation permit otherwise, the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution to shareholders whose preferential rights are superior to those receiving the distribution.

(4) The board of directors may base a determination that a distribution is not prohibited under subsection (3) of this section either on financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances.

(5) Except as provided in subsection (7) of this section, the effect of a distribution under subsection (3) is measured:

(a) In the case of distribution by purchase, redemption or other acquisition of the corporation's shares, as of the earlier of:

---

**23.** Esposito also contends these events of 1995–1996 justify equitable subordination of Noyes' non-recourse secured claim against Lake Country to all other creditor claims in the case. § 510(c)(1).

**24.** The Brief of Plaintiff in Opposition to Motion for Summary Judgment states, at p. 1, that the claim is brought under § 544. Neither the complaint or the record supports this statement.

(i) The date money or other property is transferred or debt incurred by the corporation, or

(ii) The date the shareholder ceases to be a shareholder with respect to the acquired shares;

(b) in the case of any other distribution of indebtedness, as of the date the indebtedness is distributed; and

(c) In all other cases, as of:

(i) The date the distribution is authorized if the payment occurs within one hundred twenty (120) days after the date of authorization, or

(ii) The date the payment is made if it occurs more than one hundred twenty (120) days after the date of authorization.

Noyes argues that § 30–1–6[25] and § 30–1–48[26] apply, as the new statute was adopted more than a year after the subject transaction.

 Section 30–1–1701, a portion of the "transition provisions" related to this recodification, provides that the new statute applies to all domestic corporations in existence on the effective date of July 1, 1997. The Official Comment to this section indicates that the fundamental principal is that the new act should ultimately be made fully applicable to all existing corporations as well as new ones formed after the effective date. It specifically rejected the concept of "grand fathering" existing corporations under the earlier statutes, since that would result in the "permanent coexistence of two different and overlapping systems of corporate law with ultimate confusion." *Id.* Thus APDC would be subject to § 30–1–640 today.

However, to determine whether § 30–1–640 applies to the 1996 Agreement, the savings provision of § 30–1–1703 must be used. It provides that:

**30–1–1703. Savings provisions.—**

(1) Except as provided in subsection (2) of this section, the repeal of a statute by this chapter does not affect:

(a) The operation of the statute or any action taken under it before its repeal;

(b) Any ratification, right, remedy, privilege, obligation or liability acquired, accrued, or incurred under the statute before its repeal;

(c) Any violation of the statute, or any penalty, forfeiture or punishment incurred because of the violation, before its repeal;

(d) Any proceeding, reorganization or dissolution commenced under the statute before its repeal, and the proceeding, reorganization or dissolution may be completed in accordance with the statute as if it had not been repealed.

(2) If a penalty or punishment imposed for violation of a statute repealed by this chapter is reduced by this chapter, the penalty or punishment if not already imposed shall be imposed in accordance with this chapter.

The Court has not been provided or found any reported judicial construction of these provisions. It is concluded that § 30–1–1703 constrains the Court to apply the former Idaho Code provisions, such as § 30–1–6, to acts occurring before that statute's repeal.

### 2. The requirement of exhaustion of remedies

 *Weil v. Defenbach,* 31 Idaho 258, 170 P. 103 (1918) establishes an obligation, when a plaintiff seeks to recover on an allegedly improper distribution of corpo-

---

**25.** Section 30–1–6 entitled "Right of corporation to acquire and dispose of its own shares" provided in part: "No purchase of or payment for its [the corporation's] own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent."

**26.** This section dealt with distributions from capital surplus, and prohibited the same when such distributions occurred at a time when the corporation was insolvent or where such distributions would render it insolvent.

rate assets, for that plaintiff to exhaust its remedies against the corporation before assailing the shareholder recipients.

In the first place it may be stated a general rule where a creditor seeks to enforce against a stockholder an individual statutory liability, he must first exhaust his remedy against the corporation. . . . In the second place, Rev.Code § 2732, as amended Sess. Laws 1909, p. 159, makes such withdrawal and distribution of assets unlawful. Such action of the stockholders and directors of the bank was void as to existing creditors.

. . .

The creditor must exhaust his remedy against the corporation, and the corporation, or its receiver, as in this case, must exhaust its remedy for the benefit of the creditor against the stockholder; and, as already noticed, since their action in dividing up the assets was absolutely void as to existing creditors, the funds thus distributed must be regarded either as still a portion of the assets of the corporation as held in trust by such stockholders for the liquidation of its debts.

170 P. at 104, 105 (some citations omitted.)

 *Weil,* in regard to the requirement of exhaustion of remedies and recovery against the corporation, is unambiguous. This limitation on recovery is a rational one. There is no reason to impose liability on a shareholder for a distribution previously received from a corporation, which allegedly made or would make the corporation unable to pay its debts, if the corporation can in fact satisfy its obligations. Nothing in the record establishes Lake Country's pursuit of APDC much less an exhaustion of remedies. This is a bar to Esposito's maintenance of the action.

### 3. Standing (the question of present creditor vs. future creditor)

Noyes also contends that this cause must be dismissed because Lake Country did not exist as of the date of the transfer, February 1996, and therefore could not have been an existing creditor of APDC at the time of the transfer. Noyes asserts that this eliminates the standing of Lake Country, and thus Esposito as its trustee, to sue under the Idaho statutes.

 Idaho Code § 30–1–6 prohibits a corporation's purchase of or payment for its own shares at a time when the corporation is insolvent or when such purchase or payment would make it insolvent. While this provision does not directly address or resolve the question of who has standing to attack such transfers, *Weil* indicates that a transfer in violation of statute is "void as to existing creditors." *Id.,* 170 P. at 104, and at 105 (emphasis supplied). *See also, Chadwick v. Holm,* 31 Idaho 252, 170 P. 87, 88 (1918). Esposito has identified no Idaho decisions which hold that the transfer is void as to "future creditors."

To the contrary, *LaVoy Supply Company v. Young,* 84 Idaho 120, 369 P.2d 45 (1962) appears to validate the Defendant's reading of *Weil.* In that case, Young made loans to LaVoy Supply in November 1955 and February 1956. In March 1956, he also purchased capital stock of that corporation. In April 1956, Young had become dissatisfied with the management of the corporation and advised that his stock was for sale. The president of the company exercised an option to repurchase the stock. All Young's loans, and the stock repurchase price, were consolidated into a single note, secured by corporate assets. This occurred in April 1956. Payments were made to Young until June 1957, when they went into default. Plaintiff in intervention, Hubbard Lumber, Inc., became a creditor of the corporation in June 1957, well after the date the repurchase agreement had been made. When LaVoy Supply brought an action to stop Young's foreclosure of his chattel mortgage and to cancel the note and mortgage, Hubbard and another creditor (Dille) intervened.

The Court recognized "[a] corporation itself cannot have a stock repurchase declared illegal, nor can creditors who are

not injured have a right to complain." 84 Idaho at 127, 369 P.2d at 49. It further stated:

> Hubbard Lumber, Inc., had no right of intervention because there was no obligation due it from plaintiff LaVoy as of April, 1957 [*sic*, 1956]. Intervenor Fern Dille had a continuing account with the corporation, making charges and receiving payments thereon between April, 1956, and October, 1957. Therefore, this creditor could not be classified as one who could object to the transaction between defendant Young and the corporation.

84 Idaho at 128, 369 P.2d at 49.[27]

The Court finds this approach to the statute to be sound. It is reasonable to limit standing to contest an allegedly improper distribution of corporate assets to those creditors in existence at the time of the transfer. Future creditors deal with the corporation as they, at such later time, find it. They can evaluate the capitalization and financial strength of the corporation, and decide whether or not to engage in business with it.[28]

Lake Country was not an existing creditor of APDC at the time of the transfer to Noyes (whether in late 1995 or in February 1996), and therefore lacks standing to sue on a theory of illegal distribution in order to void the payment, note and mortgage.

Accordingly, on both the theories of exhaustion of remedies and standing, Noyes' motion for summary judgment will be granted dismissing the third cause of action for illegal dividend or improper corporate distribution.[29]

### 4. The statute of limitations

Noyes makes another attack on the illegal distribution count: that the suit is barred by the statute of limitations found at Idaho Code § 5–237. That section states:

> **5–237. Actions against directors and stockholders.**—This chapter does not affect actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three (3) years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created.

Additionally, *Weil* indicates that "[T]he statute [of limitations] could not begin to run against this judgment creditor until he had notice that the assets of the corporation were not sufficient to satisfy his debts." 170 P. at 105.

█ Contrary to Noyes' assertions, the Court concludes the mere recording of the mortgage to Noyes in March of 1996 is not sufficient to trigger the statute. The mortgage only gives notice that Noyes has a secured claim. The mortgage document itself does not establish that creditors are put on notice "of the facts upon which the penalty or forfeiture attached or the liability was created." Nothing in the recorded document discloses the terms of the shareholder redemption, or any information upon which creditors might be fairly alerted that the redemption was potentially improper.

The Court concludes this argument is not well taken.

---

**27.** The reference to "April 1957" is an apparent error. The Court made clear earlier in its decision that the repurchase transaction with Young occurred in April 19**56** and that Hubbard commenced its business relationship with LaVoy in June 1957. Nothing indicates any import or relevance of April 1957 to the analysis of the court.

**28.** *Accord, Halmi v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*, 8 F.3d 1353, 1356–57 (9th Cir.1993) (relying, in part, on *Libco Corporation v. Leigh (In re Reliable Manufacturing Corp.)*, 703 F.2d 996 (7th Cir. 1983)).

**29.** Since standing and the prerequisite of exhaustion of remedies are both lacking, the possible existence of genuine issues of material fact as to other elements of this claim for relief is of no consequence. *Celotex, supra.*

## B. Fraudulent Conveyance

██ Unlike the corporate code provisions discussed above, Esposito's contention that the Idaho fraudulent conveyance statutes were violated does not depend on the question of whether Lake Country was a present creditor or a future creditor. Idaho Code § 55–913 clearly provides standing to both.[30]

The question presented in regard to this claim for relief, rather, is whether Esposito has met his burden to establish a genuine issue of material fact as to either (i) actual intent to hinder, delay or defraud any creditor of APDC, § 55–913(1)(a), or (ii) the absence of reasonably equivalent value for the transfer APDC made to Noyes, and that APDC was going to engage in transactions with unreasonably small assets or would incur debts beyond its ability to pay, § 55–913(1)(b).

██ The Court finds Esposito has met the burden imposed by Rule 56 in regard to the "constructively fraudulent transfer" aspects of the statute. The fact that Noyes received but $2,000,000 for over twice that amount in surrendered equity and release of debt may ultimately prove to be quite a hurdle for Plaintiff. But the Court cannot find the question of "reasonably equivalent" value foreclosed at this time. This issue requires an evaluation of the entirety of circumstances, including those related to APDC's financial condition. Esposito has established the existence of issues regarding APDC's solvency and its financial strength to continue in business. Plaintiff's showing is not particularly strong, but the function of the inquiry at this point is not one of weighing the evidence or determining whether the Plaintiff can successfully prove the cause. The motion for summary judgment in this regard will be denied.

██ The Court also finds the burden met by Esposito in regard to the cause of action for actual fraud under § 55–913(1)(a). While more is required than mere suspicion alone, and little is properly before the Court at this stage, § 55–913(2) indicates that the Court may consider numerous factors in determining actual intent. Among these are the status of the

---

**30. Transfers fraudulent as to present and future creditors.—**

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they become due.

(2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, as to whether:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded [absconded];

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or become insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

transferee as an insider of the transferor, § 55–913(2)(a); the reasonable equivalence of consideration received by the transferor to the value of the asset(s) transferred, § 55–913(2)(h); and the question of the present or immediately following insolvency of the transferor, § 55–913(2)(i). The status of Noyes as a shareholder at the time of transfer, the need to evaluate the entirety of the evidence in order to establish the reasonable equivalence of value, and the questions raised through the Short declaration as to solvency support denial of the motion for summary judgment on the actual fraud contentions at this time.

## C. Equitable Subordination

■■■ Equitable subordination under § 510(c)(1) [31] requires that (1) the claimant to be subordinated engaged in inequitable conduct; (2) which resulted in injury to competing claimants; and (3) that subordination is not inconsistent with bankruptcy law. *In re Filtercorp, Inc.*, 163 F.3d 570, 583–84 (9th Cir.1998).[32]

■■ It would be difficult to resolve questions concerning the equitable or inequitable aspects of Noyes' conduct or the impact on other Lake Country creditors, on summary judgment and without a full development of the facts and circumstances. As in the other contexts discussed above, the contentions of the Plaintiff are thinly supported by the record.

Still, the declaration of Short does indicate that review of APDC books and records raises questions as to the economic status of the corporation at the time of transfer and its future viability. There is enough presented to withstand summary judgment. The motion will be denied.

## D. Lien Avoidance

■■ Esposito's fourth cause of action alleges that no value attends the secured position of Noyes against the real property subject to the 1996 mortgage and which was transferred by APDC to Lake Country. His contention is based on an alleged lack of value over and above the amounts of senior liens. This claim for relief appears to be asserted under § 506(a) and (d).

Noyes' motion for summary judgment placed a burden on Esposito to establish a genuine issue of material fact on this cause. The Plaintiff has presented nothing to establish the lack of equity.[33]

Noyes tested the claim by the motion for summary judgment. The non-moving party must meet the burden of Rule 56(e) in order to ensure the cause will go to trial. That has not been done. Noyes is entitled to, and will be granted, summary judgment dismissing this count.

An additional point deserves mention. Noyes' view of the fourth cause of action is

---

**31.** (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

**32.** It is possible to predicate an equitable subordination claim upon an illegal corporate distribution. *In re Poole, McGonigle & Dick, Inc.*, 796 F.2d 318 (9th Cir.1986). While that specific cause of action is no longer viable for the reasons discussed above, there is no reason to believe that a fraudulent conveyance, if one is proven, might not similarly support a claim for subordination.

**33.** The Morse affidavit stated that "Parcels I, II, and III" had been owned by APDC in March, 1996, and opined that there value was, collectively, $1,039,000. Even if this affidavit had been submitted by Esposito rather than West Wood and thus remained before the Court, it falls short of establishing that there is no equity available for Noyes. Nothing in this record establishes the outstanding amounts of senior encumbrances. No affidavits on the subject were filed. Nor were any requests made for judicial notice of matters in the chapter 11 file. It would be improper for the Court to search that file in order to fill the vacuum and salvage the cause of action.

that it was designed solely to frustrate his right to credit bid his claim under the West Wood liquidation plan.[34] He submits that this conclusion is supported by the fact Esposito and West Wood commenced the adversary litigation when he surfaced as a primary opponent of confirmation of the first West Wood plan of liquidation.

For the non-recourse secured creditor, the right to credit bid under § 363(k) [35] and § 1129(b)(2)(A)(ii) when the encumbered property is to be sold under the plan provides an alternative to the election available under § 1111(b). *See* 3 Collier on Bankruptcy, ¶ 363.09, at 363–60.12, and 7 Collier on Bankruptcy, ¶ 1111.03[2][b], at 1111–25 (15th rev. ed.1999); *John Hancock Mutual Life Ins. Co. v. California Hancock, Inc. (In re California Hancock, Inc.)*, 88 B.R. 226, 229–30 (9th Cir. BAP 1988). If the right is exercised, the full amount of the lien may be bid, and the creditor is not limited to the value attributed to the secured portion of the claim. *Id.* Thus, the § 506 valuation issue apparently underlying Plaintiff's fourth claim for relief would appear irrelevant.

---

**34.** See Memorandum in Support of Motion for Summary Judgment, at p. 10, n. 27.

**35.** Section 363(k) provides:

(k) At a sale under subsection (b) of this section of property that is subject to a lien

## VI. CONCLUSION

Noyes' motion to strike the Esposito declaration and the Fasnacht affidavit will be granted. The Court will also refuse to consider the Morse affidavit. Noyes' motion to strike the Short declaration will be denied.

Noyes' motion for summary judgment will be granted as to the first cause of action, alleging violation of the Idaho business corporation statutes, on the basis of Lake Country's failure to exhaust remedies against APDC and on Lake Country's lack of standing as an existing creditor of APDC at the time of the contested transaction. The motion for summary judgment will also be granted in regard to the fourth count of the complaint. The motion for summary judgment in all other regards will be denied.

Counsel for Noyes shall submit orders accordingly.

that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.